**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.:  03:10CV00028**

SHAWN SMITH,

Plaintiff,

v.

WAVERLY PARTNERS, LLC, and
ALLIEDBARTON SECURITY SERVICES,
LLC d/b/a HRPLUS,

Defendants.

**SECOND AMENDED COMPLAINT**

Plaintiff Shawn Smith, complaining of Waverly Partners, LLC ("Waverly") and AlliedBarton Security Services, LLC d/b/a HRPlus ("AlliedBarton") (collectively "Defendants"), alleges as follows:

1.      Plaintiff Shawn Smith ("Smith" or "Plaintiff") is an adult citizen and resident of Charlotte, Mecklenburg County, North Carolina.

2.      Upon information and belief, Waverly is a North Carolina corporation engaged in the business of executive recruitment with its principal office and place of business in Charlotte, Mecklenburg County, North Carolina.

3.      Upon information and belief, AlliedBarton is a Delaware corporation authorized to do business in the State of North Carolina, with its principal office in Conshohocken, Pennsylvania.

4.      Upon information and belief, AlliedBarton acquired VanElla, Inc. d/b/a VanElla Background Investigations in June 2008.

5.     In November 2007, Smith was the Senior Vice President, General Counsel, and Secretary of The Cato Corporation ("Cato"), with its principal offices in Charlotte, North Carolina.

6.     Cato is a public company listed on the New York Stock Exchange and the identity of its officers, including the Secretary, are a matter of public record.

7.     Smith's immediate supervisor was John Cato, Cato's President, Chief Executive Officer, and Chairman of the Board.

8.     Prior to November 5, 2007, Harrison Turnbull ("Turnbull"), owner and principal of Waverly, identified Smith as a candidate for a position Waverly had been engaged to fill.

9.     On or about November 5, 2007, Turnbull telephoned Smith at her office, introduced himself as an executive recruiter, and asked whether Smith would consider a general counsel position with a public company outside the state of North Carolina.

10.    That evening, Smith faxed Turnbull her resume and a list of references with former employers.

11.    On or about November 6, 2007, Smith and Turnbull had a telephone conversation to set up an in-depth telephone interview.

12.    On or about November 9, 2007, Turnbull interviewed Smith by telephone in-depth about her education, background, and work experience.

13.    On or about November 20, 2007, Turnbull interviewed Smith in-person for approximately two (2) hours.

14.    Prior to November 29, 2007, Turnbull advised Smith that she was one of three candidates he had selected to meet and interview with Waverly's client.

15.     On or about November 29, 2007, using Smith's personal email address to maintain confidentiality and avoid disclosure to her employer, Turnbull emailed Smith certain forms to complete in order to move to the next phase of the recruitment process, including a Fair Credit Reporting Act ("FCRA") consent form (the "Consent Form").

16.     Smith signed and returned the Consent Form to Turnbull on or about November 30, 2007.  The Consent Form authorized Waverly to verify, among other things, Smith's "past employment."

17.     The Consent Form did not authorize Waverly or AlliedBarton to contact Smith's current employer, Cato.

18.     Prior to November 29, 2007, Smith expressed concern to Turnbull that her job would be in jeopardy if her immediate supervisor, John Cato, became aware that she was interviewing.

19.     Prior to November 29, 2007, Turnbull told Smith that no references would be contacted unless she was the final candidate and then only the specific individuals she listed as personal references would be contacted.  Smith never authorized Defendants to contact Cato in general or to contact any individuals at Cato other than those specified and only under the circumstances specified above.

20.     On or about December 5, 2007, AlliedBarton, acting as agent for Waverly, faxed a copy of the Consent Form to Cato.

21.     Smith never authorized either Waverly or its agent, AlliedBarton, to send the Consent Form to Cato to verify her employment.

22.     Turnbull knew that Smith was employed by Cato when he first contacted her on November 5, 2007.

23.     Upon information and belief, when AlliedBarton faxed the Consent Form to Cato, it was distributed to individuals outside of Cato's Human Resources Department.

24.     On December 5, 2007, Smith learned that Waverly, through its agent AlliedBarton, had contacted Cato to request verification of her employment when Cato's Senior Vice President of Human Resources, Robert Brummer ("Brummer"), presented Smith with a copy of the faxed Consent Form.

25.     Brummer notified Smith that her immediate supervisor, John Cato, expected her to resign as a result.

26.     Smith assured Brummer that her position at Cato, her ability to continue to perform her job satisfactorily, and her commitment to fulfill her confidentiality obligations to the Company, had not been compromised in any way.

27.     Smith immediately contacted Turnbull by telephone and advised him of what had occurred. Turnbull told Smith that Waverly had engaged AlliedBarton to verify her past employment.

28.     Turnbull described AlliedBarton's actions in sending the Consent Form to Cato as "reckless" and said he would investigate how it had happened and get back to Smith.

29.     Turnbull offered to speak to Cato directly to confirm that he had solicited Smith, that Smith had not yet been interviewed by the prospective employer, and that the prospective employer was not a competitor of Cato.

30.     On or about December 6, 2007, Turnbull telephoned Smith to advise her that Waverly's management or executive committee had met via conference call and had implemented certain steps to ensure this would not happen to another candidate.

31.     In January 2008, at her request, Turnbull met Smith for lunch during which Smith advised Turnbull that the Consent Form only authorized contacting former employers, and Turnbull replied that he did not know what the Consent Form said.

32.     Neither Turnbull nor any other Waverly representative has contacted Smith since January, 2008.

33.     Upon information and belief, Waverly's policy and procedure, upon which Smith was entitled to rely, was to not contact anyone at a candidate's current employer without the candidate's express consent and only after the interview process was complete and the candidate had been selected.

34.     Upon information and belief, AlliedBarton's policy and procedure upon which Smith was entitled to rely, was to not contact anyone at a candidate's current employer without the candidate's express consent and only after the interview process was complete and the candidate had been selected.

35.     Although Smith had no intention of leaving her position with Cato unless she accepted an offer from another employer, on December 17, 2007, Cato terminated her access to voicemail and email, advised her that she was being given the opportunity to resign in lieu of termination, and instructed her not to return to the office.

36.     On or about December 18, 2007, Smith traveled to Nashville, Tennessee to interview with Waverly's client.

37.     On or about December 22, 2007, Turnbull telephoned Smith to advise her that she was not the final candidate for the position.

38.     Upon information and belief, as a result of the actions and inactions of Waverly and its agent, AlliedBarton, which resulted in the Consent Form being sent to Cato, Cato involuntarily terminated Smith effective December 31, 2007.

## COUNT ONE
### (Invasion of Privacy against Waverly and AlliedBarton)

39.     Plaintiff realleges and incorporates by reference the paragraphs above.

40.     Plaintiff had a reasonable expectation of privacy to maintain the security of her current employment by not revealing to her current employer any consideration she gave to other potential employment positions.

41.     Plaintiff had a reasonable expectation of privacy in the importance of her ability to earn a living, in her personal preferences and desires to earn a living, and in her personal plans on earning a living.

42.     Plaintiff also had a reasonable expectation of privacy based on the nature of Defendants' business and Plaintiff's conversations with Turnbull. Plaintiff was considering a senior executive position, for which there is a small market, thus increasing the importance of protecting Plaintiff's privacy interests.

43.     Defendants intruded upon Plaintiff's privacy by failing to protect her privacy and by faxing the Consent Form, without authorization, to Plaintiff's then-current employer, Cato.

44.     Defendants intruded upon Plaintiff's private affairs and personal concerns by damaging her employment with Cato and causing her involuntary termination from Cato.

45.     Defendants intentionally or with reckless disregard intruded upon the solitude, seclusion, private affairs and/or personal concerns of Plaintiff.

46.     A reasonable person would be highly offended by such intrusion under the same or similar circumstances.

47.     Smith has been damaged by Defendants' invasion of her privacy.

48.     Defendants' actions were malicious and with wanton disregard for Smith's privacy, entitling Smith to an award of punitive damages.

49.     Based on Defendants' invasion of privacy, Smith has been damaged in an amount in excess of ten thousand dollars ($10,000.00), in an amount to be proven at the trial of this matter.

50.     As a result, Smith is entitled to recover from Defendants, jointly and severally, compensatory and punitive damages.

## <u>COUNT TWO</u>
### (Fair Credit Reporting Act against Waverly and AlliedBarton)

51.     Plaintiff realleges and incorporates by reference the paragraphs above.

52.     Upon information and belief, Defendants are consumer reporting agencies.

53.     Defendants were engaged in preparing a consumer report on Smith.

54.     Defendants were not authorized to contact or obtain information from Cato in preparing the consumer report on Smith.

55.     Defendants' unauthorized disclosure of the Consent Form to Cato was an impermissible and unauthorized method of obtaining information for the consumer report under the FCRA.

56.     Defendants acted with willful and reckless disregard to the FCRA when they disclosed the Consent Form to Cato without Smith's authorization.

57.     Defendants were willful or negligent in failing to comply with the requirements imposed under the FCRA.

58.     As a result, Smith has been damaged and is entitled to recover from Defendants, jointly and severally, her actual damages as well as reasonable attorneys' fees, in an amount in excess of ten thousand dollars ($10,000.00) to be determined at trial.

59.     If Defendants' violation was willful, Plaintiff is further entitled to recover punitive damages from Defendants, jointly and severally, in an amount to be determined at trial.

### COUNT THREE
**(Negligent Misrepresentation against Waverly)**

60.     Plaintiff realleges and incorporates by reference the paragraphs above.

61.     In the course of Waverly's business, Turnbull told Smith (or led Smith to believe) that no references would be contacted until after the interview process was complete and she was the final candidate.

62.     The Consent Form did not authorize Defendants to contact or obtain information from Cato.

63.     Smith expressed concern to Turnbull that her job would be in jeopardy if her immediate supervisor became aware that she was interviewing for a different position.

64.     Waverly, through Turnbull, intended for Smith to rely upon his representations when she submitted the signed Consent Form to Waverly.

65.     Turnbull's representations were false.

66.     Waverly, through its agent AlliedBarton, sent the Consent Form to Cato before Smith interviewed for the position.

67.     Smith was not selected as the final candidate for the position.

68.     Waverly failed to exercise reasonable care by making false representations to Smith.

69. Upon information and belief, Waverly and AlliedBarton's policies and procedures were or should have been not to contact current employers of a candidate to verify employment without the candidate's express written consent.

70. The standard in the industry is not to send a general request for employment verification to a candidate's current employer, without the candidate's specific consent.

71. Upon information and belief, Defendants failed to use reasonable care in following their own policies and procedures and/or the standards in the industry.

72. Plaintiff reasonably and justifiably relied upon Defendants' policies and procedures to her detriment.

73. As a result, Plaintiff has been damaged and is entitled to recover from Defendants, jointly and severally, an amount in excess of ten thousand dollars ($10,000.00) to be determined at trial.

## COUNT FOUR
### (Unfair and Deceptive Trade Practices against Waverly and AlliedBarton)

74. Plaintiff realleges and incorporates by reference the paragraphs above.

75. Waverly is an executive recruiting firm and AlliedBarton contracted with Waverly to do the background investigation and employment verification for Smith.

76. Waverly, through Turnbull, informed Smith that no references would be contacted unless she was the final candidate.

77. Smith expressed concern to Turnbull that her job would be in jeopardy if her immediate supervisor became aware that she was interviewing for a different position.

78. Waverly, through its agent AlliedBarton, sent the Consent Form to Cato before Smith interviewed for the position.

79.     Neither Waverly nor AlliedBarton were authorized to contact or obtain information from Cato.

80.     Defendants' actions constitute unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

81.     As a result of Defendants' actions, Plaintiff has sustained damages in excess of $10,000.

82.     Pursuant to N.C. Gen. Stat. § 75-16, Plaintiff is entitled to recover treble her compensatory damages.

83.     Pursuant to N.C. Gen. Stat. § 75-16.1, Plaintiff is entitled to recover her reasonable attorneys' fees and costs.

## <u>COUNT FIVE</u>
### (*In the Alternative,* **Breach of Contract against Waverly**)

84.     Plaintiff realleges and incorporates by reference the paragraphs above.

85.     Plaintiff and Waverly, through Turnbull, entered into a verbal and written contract whereby Smith authorized Waverly to conduct a background investigation and employment verification of her "past employment," only.

86.     In the course of Waverly's business, Turnbull told Smith that no references would be contacted unless she was the final candidate.

87.     Smith signed the Consent Form authorizing Waverly and its agents to contact her former employers to verify her employment history.

88.     Smith did not authorize Waverly or its agent, AlliedBarton, to contact her current employer, Cato.

89.     Waverly, through its agent, AlliedBarton, sent the Consent Form to Cato.

90.     Waverly acted beyond the authorization in the Consent Form and breached the terms of the Consent Form.

91.     As a result of the Waverly's breach of the Consent Form, Plaintiff has been injured and is entitled to recover damages in an amount in excess of ten thousand dollars ($10,000.00), plus interest at the legal rate from the date of breach, to be determined at the trial of this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court as follows:

1.     Pursuant to Count I (Invasion of Privacy), Plaintiff have and recover of the Defendants, jointly and severally, damages in an amount in excess of ten thousand dollars ($10,000.00), plus punitive damages, in an amount to be determined at trial;

2.     Pursuant to Count II (Fair Credit Reporting Act), Plaintiff have and recover of the Defendants, jointly and severally, actual damages and reasonable attorneys' fees, in an amount in excess of ten thousand dollars ($10,000.00) to be determined at trial, plus punitive damages in an amount to be determined at trial;

3.     Pursuant to Count III (Negligent Misrepresentation), Plaintiff have and recover of the Waverly damages in excess of ten thousand dollars ($10,000.00) to be determined at trial;

4.     Pursuant to Count IV (Unfair and Deceptive Trade Practices), Plaintiff have and recover of the Defendants, jointly and severally, damages in excess of ten thousand dollars ($10,000.00) to be determined at trial, plus treble damages, and attorneys' fees and costs;

5.     In the alternative, pursuant to Count V (Breach of Contract), Plaintiff have and recover of Waverly damages in excess of ten thousand dollars ($10,000.00) to be determined at trial, plus interest at the legal rate from the date of breach;

6.      Plaintiff have and recover from Defendants, jointly and severally, all costs incurred in this action, including attorneys' fees;

7.      This action be tried by a jury; and

8.      The Court grant such other and further relief as it deems just and proper.

Respectfully submitted, this the 22nd day of March, 2010.

MALONEY LAW & ASSOCIATES, PLLC

    /s/ Tamara Huckert_____
Margaret Behringer Maloney, N.C. Bar No. 13253
Tamara L. Huckert, N.C. Bar No. 35348
1824 East 7th Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
thuckert@maloneylegal.com
Telephone:  704-632-1622
Facsimile:  704-632-1623
*Attorneys for Plaintiff Shawn Smith*

<u>**CERTIFICATE OF SERVICE**</u>

     I HEREBY CERTIFY that I electronically filed the foregoing **SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send the notice of electronic filing to the following:

Mr. Kenneth R. Raynor
N.C. Bar No. 10488
Templeton & Raynor, P.A.
1800 East Boulevard
Charlotte, NC 28203
ken@templetonraynor.com
Phone: 704-344-8500
Facsimile: 704-344-8555
*Attorneys for Waverly Partners, LLC*

Mr. David L. Levy
N.C. Bar No. 34060
Hedrick Gardner Kincheloe & Garafalo, LLP
P.O. Box 28230
Charlotte, NC 28230
dlevy@hedrickgardner.com
Phone: 704-319-5426
Facsimile: 704-602-8178
*Local Counsel for AlliedBarton Security Services, LLC d/b/a HRPlus*

Mr. Frederick T. Smith
Georgia Bar No. 657575
Ms. Maile Gilmore
Georgia Bar No. 300451
Seyfarth Shaw LLP
1545 Peachtree Street, N.E., Ste. 700
Atlanta, GA 30309-2401
Phone: 404-885-1500
Facsimile: 404-892-7056
fsmith@seyfarth.com
mgilmore@seyfarth.com
*Lead Counsel for Defendant AlliedBarton Security Services LLC d/b/a HRPlus Pro Hac Vice* Motion to be filed

     This the 22nd day of March, 2010.

     MALONEY LAW & ASSOCIATES, PLLC

       /s/ Tamara Huckert
     Margaret Behringer Maloney, N.C. Bar No. 13253
     Tamara L. Huckert, N.C. Bar No. 35348
     1824 East Seventh Street
     Charlotte, NC 28204
     mmaloney@maloneylegal.com
     thuckert@maloneylegal.com
     Telephone: 704-632-1622
     Facsimile: 704-632-1623
     *Attorneys for Plaintiff Shawn Smith*