UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-CV-28

| | |
|---|---|
| SHAWN SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| WAVERLY PARTNERS, LLC, and | ) |
| ALLIEDBARTON SECURITY | ) |
| SERVICES, LLC d/b/a HRPLUS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Defendant Waverly Partners, LLC's Motion to Dismiss (Document #19) filed April 5, 2010; Defendant AlliedBarton Security Services LLC's Motion to Dismiss (Document #21) filed April 12, 2010; and Defendant AlliedBarton Security Services LLC's Motion to Dismiss Waverly Partners LLC's cross claims for indemnification and contribution (Document #28) filed May 3, 2010. This matter is now ripe for disposition.

## I. BACKGROUND

This case arises out of the "Second Amended Complaint" (Document #17); filed on March 22, 2010 by Plaintiff Shawn Smith ("Plaintiff"), asserting five claims for relief, including, *inter alia*, state law invasion of privacy, state law unfair and deceptive trade practices, and a violation of the Federal Credit Reporting Act. The facts for the purposes of this Order are as follows.

According to the complaint, Plaintiff was formerly the Senior Vice President, General Counsel, and Secretary of The Cato Corporation ("Cato"). On November 5, 2007, Plaintiff was contacted by Harrison Turnbull ("Turnbull"), a principal of Defendant Waverly Partners, LLC

1

("Waverly") to discuss her interest in a general counsel position with a company outside of North Carolina. Over the next two weeks, Plaintiff faxed her resume and a list of references with former employers to Waverly, had several in-depth telephone conversations about the position, and had an in-person interview with Turnbull.

Soon thereafter, Turnbull sent various forms to Plaintiff, including a Fair Credit Reporting Act ("FCRA") consent form. Plaintiff signed and returned the consent form, which permitted verification of Plaintiff's former employment. Significantly, the consent form did not permit Waverly to contact Plaintiff's current employer, Cato. The consent form also contained a waiver provision in which Plaintiff agreed to indemnify, release, and hold harmless Waverly and its agents, contractors, reporting agencies and other persons from any claims, demands or liabilities arising out of the investigation of Plaintiff's background.

Turnbull told Plaintiff that no references would be contacted unless she was the final candidate for the job and then only the specific individuals listed as personal references would be contacted. Waverly hired AlliedBarton Security Services, LLC ("AlliedBarton") to conduct a background check on Plaintiff. Plaintiff avers that she never authorized Waverly or any of its agents to send the consent form to Cato to verify her employment. On December 5, 2007, AlliedBarton, faxed a copy of the consent form to Cato. Plaintiff learned of the fax when Cato's Senior Vice President of Human Resources, Robert Brummer ("Brummer"), presented Plaintiff with a copy. Brummer informed Plaintiff that Plaintiff's immediate supervisor, John Cato, expected her to resign as a result.

Plaintiff avers that although she had no intention of leaving her position with Cato unless she accepted an offer from another employer, on December, 17, 2007, Cato terminated her access to voice mail and e-mail, advised her that she was being given the option to resign in lieu

of termination, and instructed her not to return to the office. Although Plaintiff interviewed with Waverly's client the following day, within a week Plaintiff was informed that she was not the final candidate for the job.

On April 5, 2010, Waverly moved to dismiss Plaintiff's claim for invasion of privacy and claim for unfair and deceptive trade practices. On April 12, 2010 AlliedBarton moved to dismiss Plaintiff's claim for invasion of privacy, claim for a violation of the Fair Credit Reporting Act, and a claim for unfair and deceptive trade practices. On May 3, 2010, AlliedBarton moved to dismiss cross claims for indemnification and contribution brought by Waverly based on Plaintiff's claims for violation of the Fair Credit Reporting Act and breach of contract.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Id.* at 555, 570.

## III. ANALYSIS

In this matter, both Defendants move to dismiss Plaintiff's claim for invasion of privacy and claim for unfair and deceptive trade practices. AlliedBarton moves to dismiss Plaintiff's

3

claim for a violation of the Fair Credit Reporting Act against AlliedBarton alone. Additionally, AlliedBarton moves to dismiss Waverly's cross claim for indemnification and cross claim for contribution insofar as the cross claims brought by Waverly are based upon the alleged violation of the Fair Credit Reporting Act and Waverly's purported breach of contract. The Court will address these contentions in turn.

**A. Plaintiff's Claim for Invasion of Privacy**

Plaintiff's first claim alleges that when discussing potential employment opportunities with a corporate recruiter, she had a reasonable expectation that the recruiter would not inform her employer of the discussions or the fact that Plaintiff was considering other employment. Plaintiff claims that Defendants intruded upon her personal affairs and private concerns by contacting her current employer to verify her employment dates, which resulted in her involuntary termination.

North Carolina recognizes the tort of invasion of privacy by intrusion into seclusion. *Miller v. Brooks*, 472 S.E.2d 350, 354 (N.C. App. 1996). The tort of intrusion into seclusion is defined as "the intentional intrusion physically or otherwise, upon the solitude or seclusion of another of his private affairs or concerns...where the intrusion would be highly offensive to a reasonable person." *Toomer v. Garret*, 574 S.E.2d 76, 90 (N.C. App. 2002) (internal quotations omitted).

Plaintiff argues, based in large part on *Toomer*, that an employee's contact with an employment recruiter is a highly private concern and her potential quest for another position is highly sensitive. Plaintiff further argues that when Defendants sent the consent form to Cato, her livelihood and career were adversely impacted. Moreover, Plaintiff argues, Defendants contacting Cato was an interference with Plaintiff's private affairs that a reasonable person

4

would find highly offensive. As such, Plaintiff argues that the pleadings state a plausible claim for intrusion into seclusion. Plaintiff's argument fails.

Intrusion into seclusion is a tort that involves actively prying or intentional physical or sensory interference with a person's solitude or private affairs. *Burgess v. Busby*, 544 S.E.2d 4, 11 (N.C. App. 2001). The conduct alleged by Plaintiff does not amount to "actively prying" or any sort of "physical or sensory interference" with Plaintiff's solitude and private affairs. Neither does the conduct alleged by Plaintiff resemble the examples given in *Burgess* of "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." *Id.* As the North Carolina Court of Appeals noted in *Hall v. Post*, 355 S.E.2d 819, 823 (N.C. App. 1987) *reversed on other grounds*, 372 S.E.2d 711 (N.C. 1988), intrusion into seclusion "does not depend upon any publicity given a plaintiff or his affairs."

While Plaintiff did allege that Waverly faxed a consent form to her employer without Plaintiff's authorization, Plaintiff did not allege that Waverly made a physical or other sensory intrusion, or pried without authorization, into her confidential records. At most, the consent form was negligently provided to Cato to verify Plaintiff's employment with Cato, which is not a private or highly confidential matter. Defendants' conduct is contrasted with the defendant in *Toomer*, where the defendant released information contained in the plaintiff's personnel file "maliciously, in bad faith, and for retaliatory reasons." *Toomer*, 574 S.E.2d at 91. Defendants' conduct, as a matter of law, fails to rise to the level of an intentional intrusion into Plaintiff's seclusion. *See Fisher v. Commc'n Workers of Am.*, No. 08-CVS- 3154, 2008 WL 4754850, at *7 (N.C. Super. Oct 30, 2008) (finding that posting of personal information about employees,

5

including their Social Security Numbers, on publicly-accessible bulletin board not sufficient to establish an invasion of privacy claim); *Keyzer v. Amerlink LTD.*, 618 S.E.2d 768, 770-72 (N.C. App. 2005) (private investigator posing as potential client of plaintiffs' attorney and tape recording conversation without attorney's knowledge did not constitute invasion of privacy). As such, Plaintiff's claim for intrusion into seclusion fails. Therefore, this Court will **GRANT** Defendants' Motion to Dismiss Plaintiff's Invasion of Privacy claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B. Plaintiff's Claim for Unfair and Deceptive Trade Practices**

Plaintiff alleges that her complaint sufficiently states a claim under the North Carolina Unfair and Deceptive Trade Practices Act. Defendants disagree and collectively argue that Plaintiff fails to state a claim because Plaintiff's claim does not allege an unfair or deceptive trade practice and Plaintiff's claim does not sufficiently impact commerce.

The elements of an Unfair and Deceptive Trade Practices Act ("UDTPA") claim are: (1) an unfair or deceptive trade practice; (2) in or affecting commerce; and (3) injuring the plaintiff as a result. *Esposito v. Talbert*, 641 S.E.2d 695, 697 (N.C. App. 2007) (internal quotations omitted). "The purpose of the [UDTPA] is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public in this State, and it applies to dealings between buyers and sellers at all levels of commerce." *Bhatti v. Buckland*, 400 S.E.2d 440, 444 (N.C. 1991). In order to be actionable under the UDTPA, the conduct alleged must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Kelly v. Georgia-Pacific, LLC*, 671 F. Supp. 2d 785, 789 (E.D.N.C. 2009) (internal citations omitted). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the Court. *Id.* at 799.

6

*1. Whether Plaintiff alleges an unfair or deceptive act or practice*

This Court must first determine whether Plaintiff's Complaint sufficiently alleges an unfair or deceptive act or practice. *See First Atl. Mgmt. Corp.*, 507 S.E.2d 56, 63 (N.C. App. 1998). In determining the unfair or deceptive nature of an act or practice, each case is fact specific. *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981). A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position. *McInerne v. Pinehurst Area Realty, Inc.*, 590 S.E.2d 313, 316-17 (N.C. App. 2004). The relevant gauge of an act's unfairness or deception is the impact of the actor's conduct on the marketplace. *Ken-Mar Finance v. Harvey*, 368 S.E.2d 646, 648 (N.C. App. 1988) *disc. review denied*, 292 S.E.2d 574 (1988).

This court finds the acts alleged by Plaintiff do not amount to an unfair or deceptive act or practice. The gravamen of Plaintiff's claim is that Waverly and AlliedBarton negligently disclosed to Plaintiff's employer that Plaintiff was engaged in a job search. Such action is not "an inequitable assertion of power or position" on the part of Waverly or AlliedBarton. Additionally, there is no pattern of deceit or continuing efforts to take advantage of Plaintiff. Based on the conduct alleged, it would be improper to impute an immoral, unethical, oppressive or unscrupulous motive to Waverly or AlliedBarton. Therefore, because Plaintiff does not allege an unfair or deceptive trade practice, her claim under UDTPA fails.

*2. Whether Plaintiff's Claim Affects Commerce*

Assuming, *arguendo*, that Plaintiff's claim sufficiently states an unfair or deceptive act or practice, this court must next determine whether Defednants' acts affected commerce. *Esposito*, 641 S.E.2d at 697. Actions arising from the employer-employee relationship do not fall within the scope of the UDTPA. *Buie v. Daniel Int'l Corp.*, 289 S.E.2d 118, 119-20 (N.C. App. 1982);

7

*Schlipper v. Johnson*, 672 S.E.2d 548, 555 (N.C. 2009). The legislative intent behind the UDTPA was to ensure high ethical standards in dealings between businesses and the consuming public. *Hardy v. Toler*, 218 S.E.2d 342, 346 (N.C. 1975).

Plaintiff argues that her claim under UDTPA does not arise out of an employment relationship because she is not an employee of Waverly or AlliedBarton. Plaintiff unsuccessfully attempts to classify herself as a member of the consuming public because another company, Waverly, recruited her to interview for another employment position. Plaintiff's argument misses the mark.

Plaintiff's lack of an employment relationship with Defendants does not preclude her claim from arising out of an employment relationship or from otherwise being one that fails to affect commerce. Rather, statements made by non-employer Defendants to a plaintiff's supervisor can be properly defined as arising out of the employment relationship and not affecting commerce. *Esposito, 641* S.E.2d at 697-98 (affirming summary judgment because plaintiff failed to show defendant's statements and actions were in or affecting commerce or had any impact beyond his employment relationship). Because the alleged acts of Defendants did not adversely impact commerce, Plaintiff fails to state a claim under UDTPA. Accordingly, this Court will **GRANT** Defendants' Motion to Dismiss Plaintiff's claim under UDTPA.

**C. Plaintiff's Fair Credit Reporting Act Claim**

Defendant AlliedBarton argues that Plaintiff's Fair Credit Reporting Act ("FCRA") claim should be dismissed because Plaintiff failed to allege specific sections of the FCRA that AlliedBarton violated. Plaintiff argues that AlliedBarton violated the entire spirit and purpose of the FCRA, to protect consumers, by conducting a background investigation and furnishing a consumer report to Waverly that exceeded the scope of the authorization set forth in the Consent

8

form signed by Plaintiff.

Plaintiff bases her argument on two provisions of the FCRA: 15 U.S.C. §§ 1681b(b)(1) and 1681b(b)(2). (Pl. Resp. at 8-9.) Neither of these provisions, however, require a consumer reporting agency ("CRA"), such as AlliedBarton, to obtain permission from a consumer before contacting her current employer. Section 1681b(b)(1) of the FCRA merely requires that the user of a consumer report, Waverly in the current case, certify to the credit reporting agency, AlliedBarton in this case, that the user has made the required written disclosure to the consumer that a consumer report may be obtained for employment purposes and that the user has obtained prior written authorization from the consumer to procure a report. 15 U.S.C. § 1681b(b)(1). The second section cited by Plaintiff, Section 1681b(b)(2), requires the user to give the consumer the written disclosure to obtain the written authorization for the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A). Simply stated, neither of these sections places any limitation on a credit reporting agency's contact with any third party when conducting a background investigation, including a consumer's current employer. Therefore, this Court will GRANT Defendant AlliedBarton's Motion to Dismiss Plaintiff's claim against AlliedBarton for violation of the FCRA.

**D. Waverly Partners, LLC's Cross Claims for Indemnification and Contribution**

Waverly's cross claims against AlliedBarton seek indemnification and contribution in connection with all of the claims brought by Plaintiff in her complaint. AlliedBarton argues that Waverly's cross claims relating to Plaintiff's FCRA and breach of contract claim fail to state claims as a matter of law. Specifically, AlliedBarton argues that the FCRA does not create rights of indemnification and contribution and, under North Carolina law, a party cannot recover for equitable indemnification or contribution in connection with a breach of contract claim. This

Court agrees with AlliedBarton and, for the reasons stated herein, will grant AlliedBarton's motion to dismiss Waverly's cross claims based on Plaintiff's FCRA claim and Plaintiff's breach of contract claim.

> 1. *Whether the FCRA expressly or impliedly creates a right to Indemnification or contribution.*

The United States Supreme Court has instructed that a right of indemnification or contribution may arise in one of two ways: (1) through an affirmative creation of a right by Congress, either expressly or by clear implication; or (2) through the federal common law. *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981) (internal citation omitted). Thus, the first question this court must resolve is whether the FCRA, explicitly or implicitly, creates a right to indemnification or contribution.

The FCRA does not contain any express language providing for indemnification or contribution. *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, MDL No. 1715, Lead Case No. 05-7097, 2008 U.S. Dist. Lexis 1831, at *12 (N.D. Ill. Mar. 5, 2008) ("We begin with the statute itself, which plainly does not grant Ameriquest any right to seek indemnification or contribution from CRAs"); *Meyers v. Freedom Credit Union*, Civil Action No. 05-3526, 2007 U.S. Dist. Lexis 70032, at *7 (E.D. Pa. Sept. 21, 2007) ("[I]t is clear that the FCRA does not expressly create a cause of action for contribution.").

Neither does the FCRA implicitly create rights of indemnification or contribution. *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520 (W.D. Wash. 2006) (holding that the FCRA does not imply a right of indemnification or contribution). When Congress enacts a comprehensive legislative scheme, courts presume that remedies that were not included in the statute were intentionally omitted. *Northwest Airlines, Inc. v. Transport Workers Union*, 451

U.S. 77, 97 (1981). As numerous courts have observed, "[i]t appears that Congress was meticulous in its enactment of the FCRA. The culpability, liability, remedy, and enforcement provisions demonstrate Congress's effort at creating a comprehensive statutory scheme." *In re Ameriquest*, 2008 U.S. Dist. Lexis 18314, at *13 (citing *Kodrick v. Ferguson*, 54 F. Supp. 2d 788, 796 (N.D. Ill. 1999) (internal quotations omitted)). Moreover, given the Congress's careful drafting of this comprehensive statutory scheme, omitting any right of indemnification and contribution, it is clear that the "FCRA's structure really negates any inference that contribution or indemnification are permitted." *In re Ameriquest*, 2008 U.S. Dist. Lexis 18314, at *13014 (quoting *Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753, 754 (N.D. Ill. 1997)). Indeed, other courts that have considered indemnification and contribution under the FCRA have reached the same conclusion - that there are no such rights. *See Cintron v. Savit Enter.*, Civil Action No. 07-cv-04389(FLW), 2009 U.S. Dist. Lexis, 29813, at *7-8 (D.N.J. Apr. 8, 2009) (stating that, "[o]ther courts, when faced with this issue of whether the FDCPA or FCRA provides for an implied right of indemnification, have found that both laws create comprehensive regulatory schemes, leaving no room for a court to infer a right to contribution or indemnification"). This Court agrees that the FCRA does not explicitly or implicitly create a right to contribution or indemnity.

*2. Whether Federal Common Law Creates a Right of Contribution or indemnification*

Next, this Court must examine whether there exists a federal common law right to indemnification or contribution under the FCRA. A cause of action is only cognizable under federal common law in two contexts: (1) where a cause of action would implicate a "uniquely federal interest;" or (2) where Congress can be deemed to have delegated to the courts the power to "create governing rules of law." *Tex. Indus., Inc.*, 451 U.S. at 642. Neither of these situations

11

applies under the FCRA, and courts have uniformly held that the FCRA does not create federal common law rights of indemnification or contribution. *Cintron*, 2009 U.S. Dist. Lexis 29813, at *8 (stating that "the federal common law, as interpreted by other courts, does not authorize a right to indemnification or contribution under the FCRA ..."); *Kudlicki v. MDMA, Inc.*, Case No. 05-C-2589, 2006 U.S. Dist. Lexis, 27971, at *9-10 (N.D. Ill. May 10, 2006) (holding that "federal common law cannot be the basis for a cause of action for contribution under the FCRA").

Under the first step of the test articulated in *Texas Industries*, the FCRA does not implicate a uniquely federal interest. *Cintron*, 2009 U.S. Dist. Lexis 29813, at *9-10 (concluding that there is no federal interest in indemnification or contribution under the FCRA); *Kudlicki*, 2006 U.S. Dist. Lexis 27921, at *9-10 (stating that "[t]he FCRA's purpose does not fall within either category highlighted by *Texas Industries* ..."); *Meyers*, 2007 U.S. Dist. Lexis 70032, at *7 (holding that there is no uniquely federal interest in indemnification or contribution under the FCRA). Uniquely federal interests include cases concerning the rights and obligations of the United States, interstate disputes, international disputes, relations with foreign nations, and admiralty cases. *Tex. Indus., Inc.*, 451 U.S. at 641. The right to indemnification or contribution under the FCRA is not related to any of these issues or areas of law.

Under the second step of the test articulated in *Texas Industries*, the FCRA does not delegate to the courts the power to create additional or supplementary liabilities, such as indemnification or contribution. *Cintron*, 2009 U.S. Dist. Lexis 29813, at *9-10 (holding that the "FCRA contains no delegation to the courts of the power to create additional or supplementary liabilities.") (quoting *Meyers*, 2007 U.S. Dist. Lexis 70032, at *7). Therefore, because the FCRA neither implicates a uniquely federal interest nor delegates powers to the courts to create rules of

law, the federal common law does not create rights of indemnification or contribution in the FCRA context.

>  *3. Whether a Right to Indemnification or Contribution is appropriate in connection with Plaintiff's Breach of Contract Claim*

A party's right to indemnity can arise in three ways under North Carolina law: (1) through an express contract; (2) by a contract implied-in-fact; or (3) by a contract implied-in-law. *Kaleel Builders, Inc. v. Ashby*, 587 S.E.2d 470, 474 (N.C. App. 2003). Because none of these situations apply to the current case, Waverly's cross claim for indemnity or contribution based on Plaintiff's breach of contract claim fails to state a claim upon which relief can be granted.

First, Waverly does not allege that it has an express contractual right of indemnity against AlliedBarton. Absent such express provision, Waverly cannot seek indemnity under an express contract. *See id.* at 40 (holding that plaintiff cannot recover under an express contract for indemnity where he does not plead any such express contractual right).

Second, Waverly cannot be indemnified under a theory of contract implied-in-fact. To recover under a theory of contract implied-in-fact, a party must demonstrate circumstances indicating that the parties intended to establish an indemnitor-indemnitee relationship. *Id.* at 40-41; *see also McDonald v. Scarboro*, 91 N.C. App. 13, 22-23 (1988) (holding that there was sufficient evidence to find a contract implied-in-fact where one defendant promised to provide the other defendant with an attorney if he was sued by plaintiff for breach of contract). Here, Waverly does not allege, nor are there any circumstances indicating, that the parties intended to create an indemnity relationship. Thus, Waverly cannot recover under a contract implied-in-fact theory of indemnity.

Finally, Waverly cannot recover by indemnity implied-in-law. Under North Carolina law, indemnity implied-in-law is an equitable theory whereby a passively negligent tort-feasor can seek indemnification from an actively negligent tort-feasor. *Kaleel*, 161 N.C. App. at 41. This equitable theory, however, is available only for actions sounding in tort, and not to breach of contract claims. *Id.* at 41 ("For indemnification implied-in-law ... North Carolina law requires there be an underlying injury sounding in tort"). Waverly's cross claim, which seeks indemnity for breach of contract and not a tort, thus fails to state a claim upon which relief can be granted. Therefore, Waverly's cross claim for indemnification against AlliedBarton in connection with Plaintiff's breach of contract claim is dismissed with prejudice.

As in the case of laws regarding indemnification, it is well-settled that a right to contribution can only arise from a claim sounding in tort. *See Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 882-83 (2004) (holding that a breach of contract does not give rise to a claim for contribution). Contribution is a statutory right in North Carolina governed by the Uniform Contribution Among Tort-Feasors Act. N.C. Gen. Stat. § 1B-1 (stating that the right is applicable where two or more persons become jointly or severally liable in tort to the same person). No such right exists for claims that do not sound in tort, such as breach of contract. *Kaleel*, N.C. App. at 43 ("Therefore, by clear language of the statute, plaintiff is not entitled to contribution for a claim sounding only in contract."). Therefore, Waverly's cross claim for contribution against AlliedBarton in connection with Plaintiff's breach of contract claim is dismissed with prejudice.

In sum, Waverly's claim for contribution or indemnification based on Plaintiff's FCRA and breach of contract claims fail to state claims as a matter of law. Accordingly, to the extent Defendant Waverly is held liable to Plaintiff based on Plaintiff's FCRA claim or Plaintiff's

breach of contract claim, Defendant Waverly may not recover contribution or indemnification for those claims from Defendant AlliedBarton. This Court's Order does not, however, preclude Defendant Waverly from recovering indemnification or contribution from AlliedBarton based on Plaintiff's claim for negligent misrepresentation, if Plaintiff is ultimately successful in bringing that claim.

AlliedBarton's cross claims against Waverly relative to Plaintiff's UDTPA and invasion of privacy claims are moot because those claims are dismissed by this Order.

## IV. CONCLUSION

The following is a summary of this Order, referring to counts in the Second Amended Complaint:

*Plaintiff's claims*

(1) Plaintiff's claim for invasion of privacy against Waverly and AlliedBarton (Count One) is **DISMISSED with prejudice**.

(2) Plaintiff's claim for violation of the Fair Credit Reporting Act (Count Two) is **DISMISSED with prejudice** against AlliedBarton. Plaintiff's claim for violation of the Fair Credit Reporting Act (Count Two) against Waverly remains.

(3) Plaintiff's claim for negligent misrepresentation (Count Three) against Waverly remains.

(4) Plaintiff's claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act (Count Four) against Waverly and AlliedBarton is **DISMISSED with prejudice**.

(5) Plaintiff's claim for breach of contract (Count Five) against Waverly remains.

*Waverly's Cross Claims*

(6) Waverly's cross claim for indemnification or contribution based on Plaintiff's claim for breach of contract (Count Five) is **DISMISSED with prejudice**.

(7) Waverly's cross claim for indemnification or contribution based on Plaintiff's claim for violation of the Fair Credit Reporting Act (Count Two) is **DISMISSED with prejudice**.

(8) Waverly's cross claim for indemnification or contribution based on Plaintiff's claim for negligent misrepresentation (Count Three) remains.

(9) Waverly's remaining cross claims for indemnification or contribution are **DISMISSED as moot**.

*AlliedBarton's Cross Claims*

(10) AlliedBarton's cross claims against Waverly relative to Plaintiff's UDTPA and invasion of privacy claims are **DISMISSED as moot** because those claims are dismissed by this Order.

**THEREFORE, IT IS HEREBY, ORDERED THAT:**

(1) Defendant Waverly Partners, LLC's Motion to Dismiss (Document #19) is **GRANTED.**

(2) Defendant AlliedBarton Security Services LLC's Motion to Dismiss (Document #21) is **GRANTED.**

(3) Defendant AlliedBarton Security Services LLC's Motion to Dismiss Waverly Partners LLC's cross claims for indemnification and contribution (Document #28) is **GRANTED** except as noted above**.**

(4) Defendant AlliedBarton Security Services LLC's cross claims against Waverly relative to Plaintiff's UDTPA and invasion of privacy claims are **DISMISSED AS MOOT** because those claims are dismissed by this Order.

Signed: April 29, 2011

Richard L. Voorhees
United States District Judge