**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:10-CV-28**

| | |
|---|---|
| SHAWN SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **ORDER** |
| WAVERLY PARTNERS, LLC, and | ) |
| ALLIEDBARTON SECURITY | ) |
| SERVICES, LLC d/b/a HRPLUS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion to Reconsider (Doc. # 48),

filed May 27, 2011. Defendant AlliedBarton Security Service LLC filed a response on June 20,

2011. This matter is now ripe for disposition.

## I. BACKGROUND

This case arises out of the "Second Amended Complaint" (Document #17); filed on

March 22, 2010 by Plaintiff Shawn Smith ("Plaintiff"), asserting five claims for relief, including,

*inter alia*, state law invasion of privacy, state law unfair and deceptive trade practices, and a

violation of the Federal Credit Reporting Act. The facts for the purposes of this Order are as

follows.

According to the complaint, Plaintiff was formerly the Senior Vice President, General

Counsel, and Secretary of The Cato Corporation ("Cato"). On November 5, 2007, Plaintiff was

contacted by Harrison Turnbull ("Turnbull"), a principal of Defendant Waverly Partners, LLC

("Waverly") to discuss her interest in a general counsel position with a company outside of

North Carolina. Over the next two weeks, Plaintiff faxed her resume and a list of references with

1

former employers to Waverly, had several in-depth telephone conversations about the position, and had an in-person interview with Turnbull.

Soon thereafter, Turnbull sent various forms to Plaintiff, including a Fair Credit Reporting Act ("FCRA") consent form. Plaintiff signed and returned the consent form, which permitted verification of Plaintiff's former employment. Significantly, the consent form did not permit Waverly to contact Plaintiff's current employer, Cato. The consent form also contained a waiver provision in which Plaintiff agreed to indemnify, release, and hold harmless Waverly and its agents, contractors, reporting agencies and other persons from any claims, demands or liabilities arising out of the investigation of Plaintiff's background.

Turnbull told Plaintiff that no references would be contacted unless she was the final candidate for the job and then only the specific individuals listed as personal references would be contacted. Waverly hired AlliedBarton Security Services, LLC ("AlliedBarton") to conduct a background check on Plaintiff. Plaintiff avers that she never authorized Waverly or any of its agents to send the consent form to Cato to verify her employment. On December 5, 2007, AlliedBarton, faxed a copy of the consent form to Cato. Plaintiff learned of the fax when Cato's Senior Vice President of Human Resources, Robert Brummer ("Brummer"), presented Plaintiff with a copy. Brummer informed Plaintiff that Plaintiff's immediate supervisor, John Cato, expected her to resign as a result.

Plaintiff avers that she had no intention of leaving her position with Cato unless she accepted an offer from another employer. On December, 17, 2007, Cato terminated Plaintiff's access to voice mail and e-mail, advised her that she was being given the option to resign in lieu of termination, and instructed her not to return to the office. Although Plaintiff interviewed with Waverly's client the following day, within a week Plaintiff was informed that she was not the

final candidate for the job.

On April 5, 2010, Waverly moved to dismiss Plaintiff's claim for invasion of privacy and claim for unfair and deceptive trade practices. On April 12, 2010 AlliedBarton moved to dismiss Plaintiff's claim for invasion of privacy, claim for a violation of the Fair Credit Reporting Act, and a claim for unfair and deceptive trade practices. On May 3, 2010, AlliedBarton moved to dismiss cross claims for indemnification and contribution brought by Waverly based on Plaintiff's claims for violation of the Fair Credit Reporting Act and breach of contract. In an Order issued April 29, 2011, this Court, *inter alia*, dismissed Plaintiff's FCRA claim against AlliedBarton. Plaintiff now requests this Court reconsider its order dismissing Plaintiff's FCRA claim.

## II. STANDARD OF REVIEW

A motion to reconsider may properly be brought pursuant to Federal Rule of Civil Procedure 59(e). Zinkand v. Brown, 478 F.3d 634, 636-37 (4th Cir. 2007). The Fourth Circuit recognizes three grounds for amending a judgment pursuant to Rule 59(e): (1) to accommodate an intervening change in the law; (2) to account for new evidence not available prior to entry of the judgment; or (3) to correct a clear error of law or prevent manifest injustice. Pac. Ins. Co. v. Am. Nat. Fire Ins., 148 F.3d 396, 403 (4th Cir. 1998) (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2810.1, at 124 (2d ed. 1995)). Reconsideration of an order "is an extraordinary remedy which should be used sparingly." Pac. Ins. Co., 148 F.3d at 403.

## III. DISCUSSION

On April 29, 2011, this Court issued an Order wherein this Court dismissed with prejudice Plaintiff's Fair Credit Reporting Act ("FCRA") claim against Defendant AlliedBarton.

Plaintiff now moves this Court to reconsider its order dismissing the FCRA claim on the grounds that: (1) discovery of new evidence revealed that the Plaintiff has multiple actionable FCRA claims; and (2) reconsideration and alteration of the Court's order is necessary to prevent manifest injustice. Defendant AlliedBarton contends that Plaintiff does not present any new evidence, this Court's Order does not constitute "manifest injustice," and the arguments Plaintiff presents in her motion to reconsider are fatally flawed.

**A. Whether there is new evidence not available prior to entry of judgment**

Plaintiff argues that based on newly discovered evidence, Plaintiff has a claim under Section 1681e(e)(2) of the FCRA. Plaintiff argues that based on evidence obtained during discovery, Plaintiff can now establish that AlliedBarton did not have "reasonable procedures" in place to ensure compliance with the FCRA. Plaintiff points to the deposition testimony of Lynn Guerra and Ellie Kaminski as the newly discovered evidence.

To amend a judgment based on new evidence, a party must show both that the evidence was newly discovered or unknown until after the entry of judgment, and that with reasonable diligence it could not have discovered the evidence prior to entry of judgment. France v. Zapata Haynie Corp., No. 90-2626, 1991 U.S. App. LEXIS 23269, at *11 (4th Cir. Oct. 7, 1991) (citing Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989). "Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting reconsideration as a matter of law." Id. (denying plaintiff's motion to reconsider based on deposition testimony that was obtained only one week before order dismissing case).

In the instant case, Plaintiff's new evidence is deposition testimony that she obtained on January 22, 2011. This Court issued its Order on April 29, 2011 – over three months after Plaintiff became aware of this evidence. Accordingly, this evidence does not create a basis for

reconsideration as a matter of law. <u>Zapata</u>, 1991 U.S. App. LEXIS 23269, at *11. As such, Plaintiff has failed to present any new evidence that would warrant this Court reconsidering the April 29, 2011 Order.

**B. Whether this Court's Order constitutes "manifest injustice"**

In the context of a motion to reconsider, manifest injustice is defined as "an error by the court that is direct, obvious, and observable." <u>Register v. Cameron Berkley Co.</u>, 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007). Rule 59(e) is not a vehicle to advance new arguments and legal theories that could have been raised prior to the issuance of a judgment. <u>See Pac. Ins. Co.</u>, 148 F.3d at 403 ("Rule 59(e) motions may not be used, however, to raise new arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel theory that the party had the ability to address in the first instance.") (internal citations omitted).

Plaintiff's new theories do not demonstrate an error by the Court that is "direct, obvious, and observable." Instead, Plaintiff's motion is an improper attempt to revive an FCRA claim that has failed as a matter of law. Manifest injustice does not exist where a party could have presented an argument but chose not to do so until after a final order. <u>In re.: T 2 Green, LLC</u>, 364 B.R. 592, 606 (Bankr. D.S.C. 2007). Regardless, Plaintiff's new arguments are fatally flawed and she fails to establish that the previous Order of this court will result in manifest injustice.

**1. Plaintiff's New Allegation Under 1681d(d) Fails as a Matter of Law**

Section 1681d(d) applies to investigative consumer reports, and requires a Credit Reporting Agency to obtain a certification from the person requesting an investigative consumer report prior to preparing or furnishing the report. 15 U.S.C. § 1681d(d). Plaintiff now alleges for the first time in this action that AlliedBarton violated Section 1681d(d) by obtaining an

investigative consumer report on her without first obtaining certification from Waverly Partners, LLC. Plaintiff's argument fails for two reasons. First, AlliedBarton did not prepare an investigative consumer report on Plaintiff. Second, even if what AlliedBarton prepared is considered an investigative consumer report on Plaintiff, AlliedBarton received the necessary authorization from Waverly.

For purposes of the FCRA, an "investigative consumer report" is a consumer report in which information about a consumer is "obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom [s]he is acquainted or who may have knowledge concerning any such items of information." 15 U.S.C. § 1681a(e). Simply put, AlliedBarton did not conduct any personal interviews of Plaintiff's neighbors, friends, associates, or anyone else about Plaintiff. In order to meet its obligations under Section 1681e(b), AlliedBarton attempted to confirm Plaintiff's employment status with Cato. While Plaintiff takes issue with the manner in which AlliedBarton attempted to confirm her employment with Cato, this communication did not involve any personal interviews and does not constitute and investigative consumer report. As the FTC has stated:

> If a CRA simply checks facts stated on a job applicant's employment application, such as asking a prior or current employer whether an individual worked at the company during specific years, what the individual's job titles were during the employment period, and the individual's final salary, such fact-checking would not constitute an interview. A CRA that produced for a potential employer a report based on responses to these questions would be providing a consumer report, but not an investigative consumer report.

Staff Opinion Letter from Fed. Trade Comm'n (July 9, 1998). AlliedBarton's sending of a facsimile to Cato to confirm her employment does not turn its report on Plaintiff into an investigative consumer report. As such, Plaintiff's claim under Section 1681d(d) fails.

Moreover, AlliedBarton did not violate Section 1681d(d) because Waverly obtained the requisite consent to inform Plaintiff and then provided the same to AlliedBarton. The consent form that Plaintiff signed and which Waverly provided to AlliedBarton specifically states "[s]everal consumer reports may be obtained on you . . . The reports may be investigative consumer reports . . . ." Because AlliedBarton did not violate Section 1681d(d), Plaintiff's claim further fails.

## 2. Plaintiff Fails to State a Claim under Section 1681b

Plaintiff next argues that AlliedBarton violated 15 U.S.C. §§ 1681b(a), 1681b(b)(1), and 1681b(b)(2) of the FCRA when it faxed Plaintiff's signed consent form to Cato. None of these provisions, however, prohibit a CRA from communicating with a consumer's employer. Section 1681b(a) delineates the limited purposes for which a CRA may furnish a consumer report. Section 1681b(b)(1) requires certification from a user of a consumer report, in this case Waverly, to certify to the CRA, AlliedBarton, that the user has made the required disclosures to the consumer that a consumer report may be obtained for employment purposes and that the user has obtained prior written authorization from the consumer to procure the report. Section 1681b(b)(2) requires the user to give the consumer a written disclosure and obtain written authorization from the consumer prior to procuring a consumer report. These provisions do not place any limitation on a CRA's contact with any third party when conducting a background investigation, including a consumer's current employer.

To circumvent the fact that these provisions do not impose liability on AlliedBarton, Plaintiff fashions a novel theory that she presents for the first time in this action in her motion for reconsideration. Specifically, Plaintiff claims that the consent form she signed authorizing Waverly and its agents to obtain consumer reports on her is a consumer report. From this faulty

premise, Plaintiff argues that AlliedBarton violated the FCRA when it faxed the consent form to

Cato. Plaintiff's theory fails for several reasons. First, the consent form specifically authorizes

Waverly, and AlliedBarton as its agent, to conduct an investigation of Plaintiff's background. In

other words, Plaintiff explicitly authorized AlliedBarton to contact third parties to investigate her

background.[1]

Second, the consent form is not a consumer report pursuant to the plain and clear

language of Section 1681a(d). A consumer report is defined as:

A communication of any information by a consumer reporting agency bearing on a
consumer's *credit worthiness, credit standing, credit capacity, character, general reputation,
personal characteristics, or mode of living* which is used or expected to be used or collected in
whole or in part for the purpose of serving as a factor for establishing the consumer's eligibility
for–(A) credit or insurance to be used for personal, family or household purposes; (B)
employment purposes; or © any other purpose authorized under 1681b of this title.

15 U.S.C. § 1681a(d) (emphasis added). AlliedBarton did not communicate any information

bearing on Plaintiff's "credit worthiness, credit standing, credit capacity, character, general

reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d). Instead, it merely

provided Plaintiff's name, Social Security Number, prior addresses, date of birth, and driver's

license information. Such minimal information does not bear on any of the seven enumerated

factors in § 1681a(d), and is thus not a consumer report. See Individual Reference Servs. Group

v. FTC, 145 F. Supp. 2d 6, 17 (D.D.C. 2001) (name, address, Social Security Number, and phone

number do not bear on required factors); In re Northwest Airlines Privacy Litig, No. 04-126,

2004 U.S. Dist. LEXIS 10580, at *8 (D. Minn. June 6, 2004) (consumers' name, flight number,

credit card data, hotel reservation, car rental, and traveling companion information do not bear

---

[1] By signing the consent form, Plaintiff also contractually waived her right to bring
claims against AlliedBarton arising out of the investigation of her background.

on categories enumerated in 1681a(d); <u>Ali v. Vikar Mgmt., Ltd.</u>, 994 F. Supp. 492, 497 (S.D.N.Y. 1998) (address information does not bear on factors); <u>Dotzler v. Perot</u>, 914 F. Supp. 328, 330 (E.D. Mo. 1996) (name, current and former addresses, and Social Security Number do not bear on factors).

Plaintiff cites two cases to support her argument that the consent form bears on the factors enumerated in Section 1681a(d). In both of these cases, however, the defendants released much more than a person's name, addresses, and Social Security Number. In <u>Rowe v. Unicare</u>, an insurance company released the plaintiffs' insurance identification numbers, Social Security Numbers, medical and pharmacy information, medical information about their dependents, and other protected health information. <u>Rowe v. Unicare</u>, No. 09 C 2286, 2010 U.S. Dist. LEXIS 1576, at *2-3 (N.D. Ill. Jan. 5, 2010). In <u>TransUnion v. FTC</u>, the court found that targeted marketing lists with names and addresses of individuals who fall into particular categories based on tradeline information (auto loan information, credit card information, mortgage information, credit limits, and other credit history information) qualify as consumer reports because the tradeline information was information considered by lenders in determining eligibility for a loan or credit. <u>TransUnion v. FTC</u>, 245 F.3d 809, 812 (D.D.C. 2001).

Third, under Plaintiff's theory, Waverly and AlliedBarton would be simultaneously complying with and violating the FCRA. This is a nonsensical and unworkable interpretation of the statute. Waverly obtained the consent form from Plaintiff to comply with Section 1681b(b)(2)(A)(ii), which requires a person to obtain a consumer's written authorization before procuring a consumer report. 15 U.S.C. § 1681b(b)(2)(A)(ii). AlliedBarton obtained a copy of Plaintiff's consent form from Waverly to comply with its obligations under Sections 1681b(b)(1)(A)(I) and 1681e(b). Section 1681b(b)(1)(A)(I) requires a CRA to obtain

certification from a user that the user obtained authorization from the consumer before the CRA can furnish a consumer report. 15 U.S.C. § 1681b(b)(1)(A)(I). In other words, AlliedBarton could not furnish a consumer report on Plaintiff without a certification from Waverly that it had obtained Plaintiff's authorization to do so. The consent form is required by various portions of the FCRA to allow a consumer report to be furnished or procured, and by definition and well-established law, is not also a consumer report. As such, Plaintiff fails to state a claim under Section 1681b and her motion for reconsideration is therefore denied.

## IV. CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's Motion for Reconsideration is **DENIED.** Plaintiff has not presented new evidence prior to entry of the judgment and reviving Plaintiff's dismissed claims is not necessary to prevent manifest injustice.

**THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration (Doc. # 47) is hereby **DENIED.**

Signed: August 12, 2011

Richard L. Voorhees
United States District Judge