**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No.: 03:10CV00028**

| | |
|---|---|
| SHAWN SMITH, | |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO WAVERLY PARTNERS LLC'S MOTION FOR SUMMARY JUDGMENT** |
| WAVERLY PARTNERS, LLC, and VANELLA, INC. d/b/a VANELLA BACKGROUND INVESTIGATIONS, | |
| Defendants. | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.2, Plaintiff, Shawn Smith ("Plaintiff"), respectfully submits this Memorandum of Law in Opposition to Waverly Partners LLC's ("Waverly") Motion for Summary Judgment and the Affidavit of Plaintiff, Shawn Smith, attached as **Exhibit 1**.

## INTRODUCTION

When Congress enacted the Fair Credit Reporting Act ("FCRA"), it explained the FCRA's overall purpose was

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this [Act].

15 U.S.C. § 1681(b). Congress also determined that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. § 1681(a)(4). "Thus, the FCRA is aimed at…the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date

1

information in a confidential and responsible manner. *Jones v. F.D.I.C.*, 144 F.3d 961, 965 (6th Cir. 1998).

## STATEMENT OF THE FACTS

In November 2007, Plaintiff was the Senior Vice President, General Counsel, and Secretary of The Cato Corporation ("Cato"), which is a public company listed on the New York Stock Exchange (Smith Aff. ¶¶ 3, 23). The identity of Cato's officers, including its Secretary, is a matter of public record. (*Id*. at 23). Plaintiff's immediate supervisor was John Cato, Cato's President, Chief Executive Officer, and Chairman of its Board of Directors. (*Id.* at 3) Plaintiff received position performance evaluations and full salary increases and bonuses and to her knowledge, her job was not in jeopardy. (*Id.*)

On or about November 5, 2007, Harrison Turnbull ("Turnbull"), Managing Director and Principal of Waverly, telephoned Plaintiff at her office at Cato, introduced himself as an executive recruiter, and asked whether she would consider the General Counsel position at Waverly's client, Central Parking. (Turnbull Dep., Individually and Waverly 30(b)(6) Designee at 12:2-14, 34:20-35:1, relevant portions attached as **Exhibit 2**; Harrison Turnbull Bio, attached at **Exhibit 3**; Smith Aff. ¶ 5). While with Cato, Plaintiff was open to other employment opportunities but had no plan to leave her position with Cato unless she secured another position. (Smith Aff. ¶ 4). Plaintiff did not know Turnbull or Waverly and had never given him her work telephone number. (*Id.* at 5).

Waverly is an executive search company and contracted with Central Parking to fill its General Counsel position. (Turnbull Dep. at 17:19-22, 20:1-2). Waverly had a pecuniary interest in recruiting qualified candidates to fill Central Parking's position. (*Id.* at 23:19-22, 84:12-17). On the evening of November 5, 2007, Turnbull emailed Plaintiff the position

2

description for the Central Parking General Counsel position, which said "Interested candidates should send a resume *in confidence* to WAVERLY PARTNERS at the address shown below." (Smith Aff. ¶ 7, Ex. 1 (emphasis added)).  On November 6, 2007, Plaintiff emailed Turnbull her resume.  (Smith Aff. ¶ 8).  On November 11, 2007, Turnbull advised Plaintiff, via email, that Central Parking's CEO wanted an in-person interview with her.  (*Id.* at 9, Ex. 2).  Over the course of the next month, Plaintiff and Turnbull had several conversations regarding the position, including in-depth telephone and in-person interviews.  (*Id.* at 10).

On November 29, 2007, Turnbull emailed Plaintiff three forms to complete:  Synopsis of Legal Experience, List of References, and Disclosure and Consent Background Investigation. (Smith Aff. ¶ 11, Ex. 3).  During their more than two-hour in-person meeting on or about November 20, 2007, Plaintiff explicitly told Turnbull that her job at Cato could be in jeopardy if her immediate supervisor, John Cato, became aware of her job search.  (*Id.* at 12).  Turnbull allayed Plaintiff's fears by explaining that no references would be contacted unless she was a final candidate and, even then, only the specific individuals she identified as personal references on her Reference List would be contacted.  (*Id.* at 13).  Turnbull made this statement to Plaintiff more than a week before she signed and returned the Consent Form to him.  (*Id.* at 15).  Turnbull never informed Plaintiff that anyone other than Waverly would be conducting the background check or investigation.  (*Id.* at 16).  Plaintiff trusted and relied upon Turnbull's representations because she had no reason to know that VanElla would contact Cato on behalf of Waverly since she explicitly informed Turnbull that she could lose her job should her immediate supervisor become aware she was interviewing elsewhere.  (*Id.* at 22).

The personal references Plaintiff identified were confidential references who had previously assured Plaintiff of confidentiality and did not include her immediate supervisor, John

CATO, the Senior Vice President of Human Resources, the general fax line at Cato's Store Development Department, or anyone other than the specific individuals identified on her Reference List. (*Id.* at 17-18, Ex. 4). Plaintiff never authorized Waverly to contact Cato, in general, or to contact any individuals at Cato other than those specified by her, who had assured her of confidentiality. (*Id.* at 19). Furthermore, they were only to be contacted if she was the final candidate for the position. (*Id.*)

Waverly contracted with AlliedBarton's predecessor, VanElla, to conduct background investigations of potential candidates for Waverly's executive search business. (Turnbull Dep. at 52:8-10; Turnbull Deposition Ex. 16, attached as **Exhibit 4**). Waverly provided Plaintiff's Consent Form to VanElla to initiate the background investigation of Plaintiff. (Kaminski Dep. at 92:10-13, relevant portions attached as **Exhibit 5**). As part of VanElla's background investigation, VanElla's employee faxed the Consent Form and a "Request for Employment Information" ("Request for Information") to a general fax line to Cato's Store Development Department, thereby identifying Plaintiff as someone who was considering other employment. (Smith Aff. ¶ 20; Kaminski Dep. at 23:2-5, 136:5-6). The Consent Form was thereafter forwarded to John Cato and the Senior Vice President of Human Resources. (Smith Aff. ¶ 21).

Additionally, a second VanElla employee contacted Cato after the first employee improperly faxed the Consent Form and Request for Information about Plaintiff. (Kaminski Dep. at 123:15-16). This second employee was a temporary employee, was on her second day at the job, was not properly trained on VanElla's policies, and had no knowledge or training on the FCRA or proper background checks. (Guerra Dep. at 6:20-7:2, 9: 13-19, 14:12, 24:4-9, relevant portions attached as **Exhibit 6**).

The Consent Form included Plaintiff's name, address, date of birth, social security number, driver's license number, and residence history. (Dkt. No. 18-1). The Request for Information requested employment information, including dates of employment, title, duties, salary, reason for leaving, and rehire eligibility. (Dkt. No. 64-2). The Request for Information also included additional questions that are not applicable for purposes of verifying employment for a loan application, such as questions about Plaintiff's work performance/work patterns, strengths, weaknesses, integrity and loyalty to those she managed, interpersonal and customer service skills, verbal skills, written communication skills, management or supervisory skills, attendance, verbal and written reprimands, harassment or violent behavior, and whether she would be recommended. (*Id.*) This information exceeded that necessary to determine whether Plaintiff worked at Cato and clearly identified her as seeking other employment.

Plaintiff only consented to a background check of her past employers, not her current employer. (Dkt. No. 18-1; Smith Aff. ¶ 19). VanElla admits that its instructions on file at the time from Waverly were to not reveal that Plaintiff was seeking employment when it conducted the employment verification on Plaintiff. (Kaminski Dep. at 18:16-18). Specifically, VanElla was to verify employment by phone under the ruse that the employment check was related to a credit application. (*Id.* at 18:16-22, 19:22-20:11, 33:9-18; 36:23-37:2).

Waverly and VanElla, by their own admissions, had a practice of using a "ruse" to contact candidates' current employers claiming to be verifying dates of employment on a credit application. (Turnbull Dep. at 46:20-47:3; Kaminski Dep. at 18:16-19:5). Neither Waverly nor VanElla advised Plaintiff of this practice nor did they obtain her consent for it. (Turnbull Dep. at 49:11-18, 65:10-13).

VanElla representatives have admitted that its conduct violated its own policies and the scope of Plaintiff's authorization and consent. (Kaminski Dep. at 135:13-136:7). Furthermore, VanElla's contact with Cato was unnecessary to verify Plaintiff's employment at Cato. Plaintiff was the Senior Vice President, General Counsel, and Secretary of Cato, a public company, and the identity of its officers, including the Secretary, was readily available as a matter of public record. (Smith Aff. ¶¶ 3, 23).

As a direct result of receiving the faxed Request for Information and learning that Plaintiff was considering other employment, Plaintiff's supervisor, John Cato, through the Senior Vice President of Human Resources, advised Plaintiff that the Consent Form had been received and that it had placed her loyalty and confidentiality in question. (Smith Aff. ¶ 24). As a result, Cato involuntarily terminated Plaintiff. (*Id.*) Plaintiff immediately contacted Turnbull (Turnbull Dep. at 37:14-38:1), who assured Plaintiff he would investigate how it had happened and expressly characterized VanElla's actions as "reckless." (*Id.* at 25). Thereafter, Waverly changed its practice with VanElla requiring that no candidates' current employer be contacted under any circumstance, even using the ruse of a credit application. (Turnbull Dep. at 62:21-25).

The week of Christmas 2007, Turnbull advised Plaintiff that Central Parking had "decided to go a different direction" and that she was not the final candidate. (Smith Aff. ¶ 27). Since she was not the final candidate, none of the individuals identified as personal references were ever contacted. (*Id.*)

6

## LEGAL AUTHORITY

## I.     STANDARD OF REVIEW.

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue of material facts exists if the of evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In deciding on a motion for summary judgment, the Court must view the facts and all justifiable inferences from the evidence in the light most favorable to the nonmoving party. *Zahodnick v. Int'l Bus. Machs. Corp.*, 153 F.3d 911, 913 (4th Cir. 1997); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## II.    THE WAIVER IN THE "CONSENT FORM" IS INVALID AND UNEFORCEABLE.

The waiver and release of claims contained in Waverly's Disclosure and Consent Form ("Consent Form") is invalid and unenforceable as a matter of law under the FCRA and controlling law.

### A. Waverly's Waiver and Release is Unauthorized and Ineffective Under The FCRA.

The FCRA prohibits the waiver of Plaintiff's statutory FCRA rights as a matter of law, so the waiver is invalid.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945), *reh'g denied*.  In *Brooklyn Savings Bank*, the Supreme Court held that:

> [A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy....With respect to private rights crated (sic) by a federal statute…the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute.

*Id.* at 697.  With regard to the FCRA, there is no authorization for a waiver of a consumer's rights, nor "does the legislative history show that Congress intended that consumers should be

7

able to sign away their legal rights under the Act." Staff Opinion Letter from Fed. Trade Comm'n (June 12,1998) ("Hauxwell Opinion Letter"), attached as **Exhibit 7**. Therefore, a consumer's waiver or release of claims under the FCRA is invalid as a matter of law.

In addition, the waiver is unenforceable because it is extraneous information not allowed in the Consent Form. The FCRA requires an employer or person seeking a consumer report for employment purposes to provide a written disclosure before obtaining the report and obtain written consent from the consumer. 15 U.S.C. 1681b(b)(2)(A). Section 1681b(b)(2)(A)(i) requires that the document provided for the consumer's disclosure and authorization consist "solely" of those two items. *Id.*; *see* Staff Opinion Letter from Fed. Trade Comm'n (Oct 21, 1997) ("Steer Opinion Letter"), attached as **Exhibit 8**.

In 1998, the Federal Trade Commission issued another opinion letter addressing whether the disclosure and authorization document could contain any extraneous information, including a "waiver by the consumer of his or her rights under the FCRA." *Hauxwell Opinion Letter*. The Hauxwell Opinion Letter, which this Court should consider persuasive, states that "[t]he inclusion of such a waiver…violated Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "***solely***" of the disclosure that a consumer report may be obtained for employment purposes." *Id.* (emphasis added). Since the waiver was included in Waverly's Consent Form, it is invalid and unenforceable.

## B. If the Court Determines the Waiver Is Valid, It Still Does Not Release Waverly or AlliedBarton.

If the Court determines that the Consent Form waiver is valid, the plain language of the waiver and release does not cover Waverly and VanElla's misconduct in this case.

8

The waiver and release language of the Consent Form states:

> I hereby indemnify, release, and hold harmless the Company, any agents or contractors of the Company, or others reporting to or for the Company, any investigators, all former employers, reporting agencies, and all those supplying references and character references, from any and all claims, demands, or liabilities *arising out of, or related to, such investigations, disclosures, or admissions*.

(Dkt. No. 18-1) (emphasis added). The "investigations, disclosures, or admissions" referenced in the Consent Form are "background, *past employment*, education, professional licenses, criminal record, civil litigation, references, character, and motor vehicle record...." *Id.* (emphasis added).

The well-established rule of contract interpretation applicable here states:

> [T]he goal of construction is to arrive at the intent of the parties when the [contract] was issued. Where a [contract] defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect.

*E.g., Singleton v. Haywood Elec. Membership Corp.*, 588 S.E.2d 871, 875, 357 N.C. 623, 629 (2003) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)). Additionally, "[a]ny ambiguity in a written contract is construed against the party who prepared the writing." *Adder v. Holman & Moody, Inc.*, 219 S.E.2d 190, 196, 288 N.C. 484, 492 (1975).

In this case, the clear language of the Consent Form authorizes an investigation of Plaintiff's "background, *past employment*, education, professional licenses,...references, [and] character..." but does not authorize any contact with Plaintiff's *current employer*. (Dkt. No. 18-1) (emphasis added).

Waverly argues that contacting Plaintiff's current employer was authorized. This argument fails for two reasons. First, it flies in the face of the generally-accepted industry

practices of executive search firms as well as Waverly's own practices and intent. (Turnbull Dep. at 38:11-14, 39:2-11, 53:22-54:3, 54:23-55:5). Not only is it ludicrous to imagine that executive candidates would knowingly agree to jeopardize their current employment, Waverly itself agreed that "[c]ommon sense is and common decency is that you don't alert the current employer that you're in conversations with their employee." (*Id.* at 54:23-25). Therefore, Waverly itself never intended such a sweeping interpretation of its own Consent Form, and to posit such an argument is disingenuous, overreaching, and consists solely of an after-the-fact legal maneuver to relieve Waverly of responsibility for causing Plaintiff to lose her job.

Second, Waverly's argument fails under the basic rules of contract interpretation, which require that every word in an agreement be given effect and that ambiguity be construed against the drafter. *E.g.*, *Singleton,* 588 S.E.2d at 875, 357 N.C. at 629; *Adder*, 219 S.E.2d at 196, 288 N.C. at 492. If the Consent Form gave Waverly the sweeping right to invade every aspect of Plaintiff's "background," as Waverly now argues, then the words "***past employment***" would be meaningless and unnecessary. On the contrary, by including the words "past employment," Waverly, specifically excluded current employment. Therefore, Plaintiff never consented to Waverly's agent outing her to her current employer, and she certainly did not waive or release her right to sue Waverly or its agent for doing so. Furthermore, if the Court determines that the Consent Form is ambiguous as to scope and intention, any ambiguity must be construed against Waverly as the drafter. *Adder*, 219 S.E. 2d at 196, 288 N.C. at 492.

Accordingly, the waiver and release in the Consent Form is invalid as a matter of law. Alternatively, if the Court determines that it is valid, Defendants exceeded the scope of the authorization, rendering the waiver inapplicable and subjecting Waverly to liability.

10

### III. VANELLA WAS WAVERLY'S AGENT, SUBJECTING WAVERLY TO LIABILITY FOR VANELLA'S MISCONDUCT.

Waverly is liable for the tortious, reckless, and grossly negligent acts of its agent, VanElla. "Every person is bound to use due care in the conduct of his business. If the business is committed to an agent…, the obligation is not changed. The omission of such care is the omission of the principal, and for the injury resulting therefrom…the principal is justly held liable." *Wrought-Iron Range Co. v. Graham*, 80 F. 474, 482 (4th Cir. 1897).

VanElla was Waverly's agent. "An agency relationship arises when parties manifest agreement that one of them shall act subject to and on behalf of the other." *Daniels v. Reel*, 515 S.E.2d 22, 28, 133 N.C. App. 1, 10-11 (1999). If an agency relationship exists, the principal is liable for the torts of his agent in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." *Whedbee v. U.S.*, 352 F.Supp. 2d 618, 625 (2005) (citing *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 121, 79 N.C. App. 483, 491 (1986)). Furthermore, vicarious liability is an appropriate theory of liability under the FCRA to achieve the statute's goal of protecting consumers. *See Jones*, 144 F.3d at 966 (analyzing the apparent authority doctrine of vicarious liability under the FCRA).

### A. Waverly Expressly Authorized VanElla to Conduct the Background Investigation, Making VanElla Its Agent.

Waverly contracted with VanElla to conduct background investigations on potential candidates as part of Waverly's executive search consulting business. (Turnbull Dep. at 52:8-10; Ex. 4). Waverly provided Plaintiff's Consent Form to VanElla so VanElla would conduct a background investigation of Plaintiff. (Kaminski Dep. at 92:10-13). Despite the express

11

limitation in the Consent Form, Waverly and VanElla decided and agreed to contact Plaintiff's employer using the ruse of a credit application. (Turnbull Dep. at 46:20-47:3; Kaminski Dep. at 18:16-19:5). VanElla performed the background investigation under the express authorization and direction of Waverly.

Waverly attempts to avoid the basic application of agency law by arguing that VanElla unexpectedly violated its policies and that it instructed VanElla to "use discretion" in conducting the background investigation. (Dkt. No. 59 at 13). However, these arguments are non-sensical and avoid the basic application of the law of agency. A master is liable for the actions of his servant even when he did not instruct him to do something wrong. "In most cases where the master has been held liable for the negligence of his servant, not only was there an absence of authority to commit the wrong, but it was committed in violation of the duty which the servant owed the master…[T]he liability of a master for the tort of his servant does not depend primarily upon the possession of an authority to commit [the wrong]." *Wrought-Iron Range*, 80 F. at 481. Waverly did not have to authorize the "unexpected" contact with Cato for liability to attach. Accordingly, Waverly is responsible for the negligent and reckless manner in which VanElla performed that which it was authorized to do.

### B. VanElla Was Functioning Within the Scope of its Contract with Waverly.

Waverly is also liable for VanElla's negligent and reckless acts because VanElla was acting within the scope of Waverly's business and not independently when the wrongful act occurred. As expected, the principle of *respondeat superior* not only applies but is controlling. The relevant inquiry is whether "the act was done or omitted by the agent while engaged in the *business* of his principal." *Wrought-Iron Range*, 80 F. at 481. If a principal "employs incompetent or untrustworthy servants, it is his fault; and whether the injury to third persons is

caused by the negligence or positive misfeasance of his agent, the maxim of *respondeat superior* applies….." *Id.* at 482. Further, whether the agent misapplied the principal's instructions is immaterial if the wrongful act was committed within the business of the principal. *Id.*

The parties did not have a contract that defined their relationships as contractor/independent contractor. Rather, Waverly hired VanElla to perform certain critical aspects of its business, the background checks on the candidates it presented to clients. (Turnbull Dep. at 52:8-10, Ex. 4). Waverly's business includes locating candidates, assessing candidates, introducing candidates, and conducting background and reference checks, among other things. (Waverly Partners' "The Search Process," attached as **Exhibit 9**). Waverly specifically identifies these functions as its responsibility in the Waverly Partners document, "The Search Process" and attached flow chart used to describe and promote its services. (*Id.*) Smith understood that Waverly conducted this work itself. (Smith Aff. ¶ 16).

Waverly chose VanElla to conduct the background investigation. (Turnbull Dep. at 42:20-22, 52:8-10, Ex. 4). In doing so, Waverly controlled what was to be done and how it was to be done. (Turnbull Dep. at 43:23-25, 48:4-11). Waverly filled out forms which instructed and controlled what Waverly wanted done. (*Id.*; Regueyra Dep. at 41:20-42:6, relevant portions attached as **Exhibit 10**). Waverly had control over the manner in which VanElla conducted the background investigation because it said VanElla "may contact" Plaintiff's current employer, yet specifically instructed VanElla to "use discretion." (Kaminski Dep. at 15:7-15, 16:8-13, 17:1-13). In this case, "may contact" Plaintiff's current employer, using the code words "use discretion," referred to a specific understanding and agreement between Waverly and VanElla, that was intended to restrict what VanElla could do and how it could do it. (Turnbull 46:20-25). They created a ruse through which VanElla was allowed to contact a current employer for an

employment verification, but could "only contact HR, state that [it was] calling for credit purposes only, and…not reveal that [it was] calling for an employment background check." (Kaminski Dep. at 16:8-13, 17:1-13).

Plaintiff was harmed by the reckless and grossly negligent manner in which the background investigation was conducted by VanElla, as the agent chosen by Waverly. Waverly is responsible for its choice and the actions of VanElla under the doctrine of *respondeat superior*.

### C. <u>Plaintiff Has Sufficient Evidence on the Agency Relationship to Reach a Jury.</u>

Finally, the determination of whether an agency relationship exists is factually intensive, making it a question properly left for the jury. *See Daniels*, 515 S.E.2d at 30, 133 N.C. App. at 14 (1999). In this case, Plaintiff has set forth sufficient evidence for a jury to find that VanElla was Waverly's agent. Therefore, the Court should deny Waverly's Motion for Summary Judgment.

### IV.   WAVERLY VIOLATED THE FCRA AND IS LIABLE TO PLAINTIFF.

Waverly contends that it cannot be held liable under the FCRA because it complied with the FCRA and VanElla did not willfully violate the FCRA. (Dkt. No. 59 at 11-16). To the contrary, Waverly violated the express provisions of the FCRA. In addition, the FCRA provides consumers with causes of action for both willful and negligent violations of the FCRA. Therefore, Waverly is liable and summary judgment should be denied.

### A. <u>Waverly Violated the Express Provisions of the FRCA.</u>

Before furnishing or using consumer reports for employment purposes, the person obtaining the report must provide a disclosure to the consumer. § 1681b(b)(2). The FCRA states:

[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

§ 1681b(b)(2)(A).

As stated above in section II-A, Waverly violated the FCRA by including a waiver and release in the document containing the disclosure and authorization. The FCRA disclosure provision requires "a clear and conspicuous disclosure…in writing…in a document that consists solely of the disclosure." §1681b(b)(2)(A)(i). Waverly's failure to provide a valid disclosure is a violation of the express provisions of the FCRA.

Additionally, Waverly and VanElla exceeded the scope of Plaintiff's authorization and consent in the Consent Form. As stated above in section II-B, the Consent Form only authorized contact with "past employment," and Plaintiff only authorized an investigation of her "past employment." (Dkt. No. 18-1, Smith Aff. ¶ 19). Waverly and VanElla failed to <u>disclose</u> to Plaintiff that they would be contacting Plaintiff's current employer, Cato.

Similarly, Plaintiff did not <u>authorize</u> Waverly or VanElla to contact Cato. It is illogical for Waverly to suggest that authorizing "an investigation of…background, past employment,…references, [and] character" authorized general contact with Plaintiff's current employer. Waverly's argument wholly ignores the principle of contract interpretation that every word is to be given effect. *Singleton*, 588 S.E.2d at 875, 357 N.C. at 629. Under Waverly's interpretation, the word "past," prior to the word "employment," is left entirely without

significance. This is contrary to the laws of contract interpretation, which require that every word be given effect and that the contract be interpreted according to its plain language.

Moreover, Waverly and VanElla had no reason to contact Cato directly to verify her current employment. Turnbull was aware of Plaintiff's current employment because he contacted Plaintiff at Cato to recruit her. (Turnbull Dep. at 12:2-14, 34:20-35:1; Smith Aff. ¶ 5). Furthermore, Plaintiff was the Secretary and General Counsel of Cato, a public company, and her position was a matter of public record. (*Id*. at 3, 23). Consequently, Waverly and VanElla failed to provide a proper disclosure and also failed to obtain Plaintiff's consent to investigate and contact Plaintiff's current employer, in clear violation of the FCRA.

**B. Waverly and VanElla's Negligent Misconduct Provides a Cause of Action under the FCRA.**

Waverly contends that Plaintiff does not have a cause of action against it for violation of the FCRA because she is unable to show that Waverly or VanElla willfully violated the FCRA. Waverly is incorrect. (Dkt. No. 59 at 13-14). The FCRA has two civil liability provisions for noncompliance – willful and negligent noncompliance. § 1681n; 1681o.

Section 1681o states "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer…." § 1681o(a). Further, section 1681n states "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer…." § 1681n(a). Since Waverly and VanElla negligently failed to comply with the FCRA, Waverly is liable to Plaintiff for her injuries.

"Every person is bound to use due care in the conduct of his business." *Wrought-Iron*, 80 F. at 482. The FCRA does not define negligence; therefore, the Court must utilize the common law definition of negligence, which is a "lack of due care under the circumstances; or the failure

16

to do what a reasonable and prudent man would ordinarily have done under circumstances of the situation; or doing what such a person under the existing circumstances would not have done." *Tiller v. Atl. Coast Line R. Co.*, 318 U.S. 54, 67 (1943) (analyzing the definition of "negligence" when not specifically defined in the Federal Employers' Liability Act).

The undisputed evidence shows that Waverly and VanElla failed to make proper disclosure to Plaintiff, exceeded the scope of Plaintiff's authorization, and failed to take reasonable measures to prevent such FCRA violations. No reasonable interpretation of the Consent Form allows Waverly or VanElla to contact Cato. Yet, VanElla assigned a two-day temporary employee, without knowledge of or training on the FCRA or background checks, to handle the background check of the General Counsel of a national retail company. (Guerra Dep. at 6:20-7:2, 9: 13-19, 14:12, 24:4-9). Additionally, a second VanElla employee, who cannot be located, violated company policy by faxing the Consent Form and the Request for Information to a general fax line at Cato's Store Development Department. (Kaminski Dep. at 136:5-6; Smith Aff. ¶ 20). The forms were not even sent to a relevant department, such as Cato's Human Resources or Employment Verification departments. (*Id.*) As Waverly's agent, VanElla handled the background check in a reckless and grossly negligent manner when it contacted Cato, and VanElla's misconduct caused Plaintiff, a senior level female attorney, to lose her job just before the economy crashed.

It is settled law in North Carolina that negligence is a question of fact for the jury. *Schnadig Corp. v. Walser*, 261 F.Supp. 311 (M.D.N.C. 1966). The court in *Schnadig* followed the Supreme Court's ruling in *Schulz v. Pennsylvania Railroad Company*, where the Supreme Court stated:

> 'It must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre.

17

Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. We think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.'

261 F.Supp. 311, 314 (citing *Schulz v. PA RR Co.*, 350 U.S. 523 (1956)). Therefore, summary judgment should be denied and the issue of Waverly's negligence and recklessness under the FCRA should be submitted to a jury.

## V. WAVERLY IS LIABLE FOR TURNBULL'S NEGLIGENT MISREPRESENTATION.

Waverly and Turnbull negligently misrepresented to Plaintiff that the search process would be confidential, meaning that Plaintiff's current employment status would not be jeopardized. They did this through their own writing--the Position Description--and through Turnbull's assurances that Plaintiff's personal references would not be contacted unless she was the final candidate. (Smith Aff. ¶¶ 7, 13, Ex. 1). Therefore, Waverly is liable to Plaintiff on her claim of negligent misrepresentation.

### A. Plaintiff's Negligent Misrepresentation Claim is Not Preempted by the FCRA.

An analysis of the FCRA's preemption language shows that Plaintiff's negligent misrepresentation claim is not preempted. The FCRA contains two preemption provisions – 15 U.S.C. 1681h(e) and 15 U.S.C. 1681t. Although the Fourth Circuit has not specifically addressed the split among other circuits regarding the interpretation of the two preemption provisions, district courts within the Fourth Circuit have consistently applied the statutory approach, which states "that § 1681h(e) preempts certain common law claims, whereas 1681t(b)

18

works concurrently to preempt appropriate statutory claims." *Davis v. Trans Union, LLC*, 526

F.Supp. 2d at 587-88. Therefore, section 1681h(e) is pertinent here.

The plain language of section 1681h(e) states:

[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence **with respect to the reporting of information** against any consumer reporting agency,…based in whole or in part **on the report**[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (2011) (emphasis added).

A parsing of the statutory language shows that common law claims are preempted, if they

are based on "***the reporting of information***…based in whole or in part ***on the [consumer]***

***report***." §1681h(e). If the claim is based on conduct outside the scope of section 1681h(e), then

the FCRA does not preempt it. *See Evans v. Trans Union LLC*, 2011 WL 672061, *7-8 (S.D.

W.Va., Feb. 14, 2011) (where the court stated the first inquiry in FCRA preemption is

determining "whether the claim falls within the scope of §1681h(e), which includes only claims

'based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or

based on information disclosed by a user of a consumer report to or for a consumer against

whom the user has taken adverse action, based in whole or in part on the report.'"). Several

courts have found that the FCRA does not preempt all claims for defamation, invasion of

privacy, or negligence. *See Shugart v. Ocwen Loan Servicing, LLC*, 747 F.Supp. 2d 938, 946

(S.D. Ohio 2010); *Joiner v. Revco Disc. Drug Centers, Inc.*, 467 F.Supp. 2d 508, 516 (W.D.N.C.

2006) (finding that the FCRA did not preempt Plaintiff's tortious interference with prospective

economic advantage claim); *Jeffery v. Trans Union, LLC*, 273 F.Supp. 2d 725, 728 (E.D. Va.

2003) (finding the FCRA did not preempt Plaintiff's defamation claim where the bank provided

false information to the credit reporting agency and failed to correct the misinformation after

repeated requests and additional information to the contrary); *cf. Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010) ("Congress intended [the FCRA's]…general bar on defamation, invasion of privacy, and negligence actions to be the *quid pro quo* for providing full disclosure under the FCRA.")

Here, Plaintiff's negligent misrepresentation claim is based upon Waverly's written materials provided to Plaintiff and Turnbull's misrepresentations regarding the confidentiality of the overall process and his assurances that her personal references would not be contacted before she was the final candidate, which assured Plaintiff that she would not be outed to her current employer until she was a final candidate. (Smith Aff. ¶ 13, Ex. 4). These misrepresentations occurred prior to Plaintiff's completion and submission of the Consent Form and did not involve the "reporting of information…based on the consumer report." (*Id.* ¶ 15). Therefore, the FCRA preemption language of 1681h(e) does not preempt Plaintiff's negligent misrepresentation claim against Waverly.

**B. Plaintiff has Sufficient Evidence to Reach a Jury on Her Negligent Misrepresentation Claim.**

A negligent misrepresentation claim "occurs when [(1)] a party justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612, 322 N.C. 200, 206 (1988). The duty of care arises when "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions…" *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 513 S.E.2d 320, 323, 350 N.C. 214, 218 (1999). Since claims for negligence generally involve factual determinations, they "are

ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner." *Id.* at 324, 350 N.C. at 220.

### 1. *Waverly Owed a Duty of Care to Plaintiff.*

Waverly owed a duty of care to Plaintiff because Turnbull's misrepresentation, as Waverly's agent, occurred in the course of Waverly and Turnbull's business and profession in which they had a pecuniary interest. Waverly contracted with Central Parking to fill its General Counsel position. (Turnbull Dep. at 17:19-22, 20:1-2). Waverly and Turnbull had a pecuniary interest in recruiting qualified candidates to fill Central Parking's position. (*Id.* at 23:19-22, 84:12-17). Turnbull was acting in the course of his business and profession when he contacted Plaintiff, on behalf of Waverly, and misrepresented through written materials and personal representations the confidentiality of the process and when and how Waverly would contact Plaintiff's personal references, including those at her current employer. (*Id.* at 12:2-14, 34:20-35:1; Smith Aff. Ex. 1).

A Fourth Circuit unpublished opinion analyzing a negligent misrepresentation claim under Maryland law, which has the same "business or professional relationship, or one in which there is a pecuniary interest," is instructive here. *See Baltimore County v. CIGNA Healthcare*, 238 Fed. Appx. 914, 923 (4th Cir. 2007) (unpublished). In *Baltimore County*, the court noted that Maryland courts have recognized a special relationship exists in pre-contractual employment negotiations. *Id.* (citing *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 756 A.2d 548, 556 (2000); *Weisman v. Connors*, 312 Md. 428, 540 A.2d 783, 793-94 (1988)). Here, Turnbull, as Waverly's representative, was standing in the shoes of Central Parking to fill the General Counsel position. Plaintiff's conversations with Turnbull are similar to the pre-contractual employment

21

negotiations referenced in *Baltimore County*, where the courts found a duty of care. Similarly here, Turnbull and Waverly owed a duty of care to Plaintiff.

### 2. *Turnbull Failed to Use Reasonable Care When He Misrepresented When Waverly Would Contact Plaintiff's References*.

During their conversations prior to November 29, 2007, Plaintiff informed Turnbull that her job at Cato could be in jeopardy if her immediate supervisor, John Cato, became aware that she was interviewing for another position. (Smith Aff. ¶ 12). Turnbull assured Plaintiff that her personal references would not be contacted unless she became a final candidate. (*Id.* at 13). Turnbull knew that Waverly contracted with VanElla to perform Waverly's background investigations and knew that Waverly authorized VanElla to "use discretion," which was code for authorizing VanElla to contact current employers to verify employment using the ruse of a credit application process, despite the express limitation to "past employment" in the Consent Form itself. (Turnbull Dep. 46:20-47:3; Ex. 4; Dkt. No. 18-1). Therefore, Turnbull did not exercise reasonable care in his representation to Plaintiff, and his representation was instead a misrepresentation.

### 3. *Plaintiff Justifiably Relied Upon Turnbull's Misrepresentations to Her Detriment*.

Plaintiff's reliance on Turnbull's misrepresentation was justifiable. Plaintiff had no reason to know that Waverly through VanElla would contact Cato since she specifically informed Turnbull that her position at Cato could be in jeopardy if her immediate supervisor became aware she was interviewing elsewhere. (Smith Aff. ¶ 12). Additionally, Waverly had no logical reason to verify her current employment at Cato because Turnbull contacted her at Cato and her employment at Cato and her specific a matter of public record. (*Id.* at 23). Further, it is not standard in the recruiting industry for recruiters to contact current employers or references

until the person is the final candidate. (Turnbull Dep. at 38:11-14, 39:2-11, 53:22-54:3, 54:23-55:5). When Cato learned that Plaintiff was interviewing for other employment, Plaintiff was terminated. (Smith Aff. ¶ 24).

Waverly suggests that because Plaintiff did not have any conversations with anyone at Waverly after she signed the Consent Form and before she found out VanElla provided it to Cato, she could not have reasonably relied upon Turnbull's misrepresentations. (Dkt. No. 59 at 19). This argument is again illogical. In order to have relied on the misrepresentations, the conversation had to have occurred prior to Plaintiff signing the Consent Form. However, the relevant conversation between Plaintiff and Turnbull regarding contacting references took place a week before Plaintiff signed the Consent Form on November 30, 2007. (Dkt. No. 18-1; Smith Aff. ¶ 15). Therefore, Plaintiff justifiably relied upon Turnbull's misrepresentations.

Waverly also argues that because Plaintiff's personal references included some executives at Cato, Waverly and VanElla were allowed to contact her current employer. (Dkt. No. 59 at 12-13). This argument is misplaced. The personal references identified by Plaintiff at Cato did not include her immediate supervisor, the Senior Vice President of Human Resources, or the general fax line at Cato's Store Development Department, to which VanElla faxed Plaintiff's Consent Form. (Smith Aff. ¶ 18, Ex. 4). Indeed, the Cato individuals Plaintiff identified as personal references did not receive Plaintiff's Consent Form. (*Id*. at 28). Plaintiff's identification of trusted Cato co-workers as personal references does not get Waverly off the hook. (*Id*. at 17) Waverly and VanElla were reckless and grossly negligent. When conducting Plaintiff's background investigation, they made a general, unauthorized, and wholly inappropriate contact of Plaintiff's current employer, outing Plaintiff's employment application elsewhere.

In sum, there are disputed issues of material fact regarding whether Plaintiff justifiably relied, to her detriment, on Waverly's written representations of confidentiality and Turnbull's misrepresentations that Waverly would not contact her personal references until she was the final candidate. (Smith Aff. ¶¶ 13-14, Ex. 1). These disputed issues preclude an award of summary judgment.

## VI.     THE CONSENT FORM IS A CONTRACT BETWEEN PLAINTIFF AND WAVERLY.

The Consent Form formed a contract between Plaintiff and Waverly regarding the terms and conditions of the background investigation. Waverly offered to conduct a background investigation of Plaintiff, at its own expense, so that Plaintiff could become a candidate for the Central Parking General Counsel position. Plaintiff accepted Waverly's offer and authorized the background investigation according to the terms and within the scope of the authorization and consent. Waverly's consideration was paying for the background investigation and the opportunity to submit Plaintiff to Central Parking; Plaintiff's consideration was consenting to the background investigation within the authorized scope. If Waverly had conducted the background investigation according to the terms of the authorization and consent, both parties would have received the benefit of the bargain. Instead, Waverly exceeded the scope of Plaintiff's authorization and consent and breached the contract.

The Consent Form was a valid contract based on offer, acceptance, and consideration. Accordingly, Waverly is liable to Plaintiff for its breach of the express terms of the Consent Form, and summary judgment should be denied.

## <u>CONCLUSION</u>

In summary, the waiver in the Consent Form is prohibited by the FCRA, so it is invalid and unenforceable as a matter of law. VanElla is an agent of Waverly, subjecting Waverly to

24

liability for VanElla's reckless and grossly negligent conduct. Further, Waverly and VanElla exceeded the scope of Plaintiff's consent and authorization and failed to obtain a proper disclosure from Plaintiff, both of which are violations of the FCRA for which Waverly is liable. Waverly negligently misrepresented the confidentiality of the search process and Turnbull negligently misrepresented that that Waverly would not contact her personal references until she was the final candidate for the General Counsel position. Both of which Waverly did not do. Finally, the Consent Form is a valid contract between Plaintiff and Waverly that Waverly breached. For the foregoing reasons, Plaintiff respectfully requests the Court to deny Waverly's Motion for Summary Judgment in its entirety.

This the 15th day of December, 2011.

**MALONEY LAW & ASSOCIATES, PLLC**

/s/ Margaret Behringer Maloney
Margaret Behringer Maloney, N.C. Bar No. 13253
Tamara L. Huckert, N.C. Bar No. 35348
1824 East Seventh Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
thuckert@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiff Shawn Smith*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO WAVERLY'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send the notice of electronic filing to the following:

Mr. Kenneth R. Raynor
N.C. Bar No. 10488
Templeton & Raynor, P.A.
1800 East Boulevard
Charlotte, NC 28203
ken@templetonraynor.com
Phone: 704-344-8500
Facsimile: 704-344-8555
*Attorneys for Waverly Partners, LLC*

Mr. David L. Levy
N.C. Bar No. 34060
Hedrick Gardner Kincheloe & Garafalo, LLP
P.O. Box 30397
Charlotte, NC 28230
dlevy@hedrickgardner.com
Phone: 704-319-5426
Facsimile: 704-602-8178
*Local Counsel for AlliedBarton Security Services, LLC d/b/a HRPlus*

Mr. Frederick T. Smith, Georgia Bar No. 657575
Mr. Jeff Sand
Seyfarth Shaw LLP
1545 Peachtree Street, N.E., Ste. 700
Atlanta, GA 30309-2401
Phone: 404-885-1500
Facsimile: 404-892-7056
fsmith@seyfarth.com
jsand@seyfarth.com
*Lead Counsel for Defendant AlliedBarton Security Services LLC d/b/a HRPlus*
*Admitted Pro Hac Vice*

This the 15th day of December, 2011.

**MALONEY LAW & ASSOCIATES, PLLC**

/s/ Margaret Behringer Maloney
Margaret Behringer Maloney, N.C. Bar No. 13253
Tamara L. Huckert, N.C. Bar No. 35348
1824 East Seventh Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
thuckert@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiff Shawn Smith*