IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:10-CV-00028-RLV-DSC

| | |
|---|---|
| SHAWN SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| WAVERLY PARTNERS, LLC, and ) | |
| ALLIEDBARTON SECURITY ) | |
| SERVICES, LLC d/b/a HRPLUS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant Waverly Partners, LLC's ("Waverly's") Motion for Summary Judgment (Doc. 58), filed November 16, 2011, and Plaintiff Shawn Smith's Objection to Magistrate Judge Cayer's Order denying the Motion for Leave to File Third Amended Complaint (Doc. 74), filed January 31, 2012.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The case arises out of Plaintiff's Second Amended Complaint, filed on March 22, 2010, which asserts five claims for relief. (Doc. 17.) Ruling on Defendants' motions to dismiss, the Court has since dismissed a number of claims; those that remain include Plaintiff's claims against Waverly for violation of the Fair Credit Reporting Act (Count Two), negligent misrepresentation (Count Three), and breach of contract (Count Five), as well as Defendant Waverly's crossclaim for indemnification or contribution based upon Plaintiff's negligent misrepresentation claim. (Doc. 45.) Defendant Waverly now moves for summary judgment in its favor on all remaining claims against it. (Doc. 58.) All of Plaintiff's claims against Defendant AlliedBarton Security Services, LLC ("AlliedBarton"), were dismissed, and Plaintiff's Motion

1

for Reconsideration regarding the dismissed claims has been denied. (Docs. 47, 53.)

According to the Complaint, Plaintiff was formerly the Senior Vice President, General Counsel, and Secretary of The Cato Corporation ("Cato"). On November 5, 2007, Plaintiff was contacted by Harrison Turnbull, a principal of Waverly, which is engaged in the business of executive recruitment, to discuss her interest in a general counsel position with a company outside of North Carolina. Following two additional interviews, Mr. Turnbull sent to Plaintiff various forms to complete, including a Fair Credit Reporting Act ("FCRA") Consent Form. Plaintiff signed and returned the forms, which, among other things, permitted verification of Plaintiff's "past employment." Waverly engaged AlliedBarton to complete this task.

On December 5, 2007, AlliedBarton faxed the completed Consent Form to Cato. Plaintiff claims she authorized neither Waverly nor AlliedBarton to send this form to her then-current employer, but rather had expressed to Mr. Turnbull the concern that her employment would be jeopardized should her supervisor become aware of her interviewing. Approximately two weeks after receiving the Consent Form, Cato management offered Plaintiff the opportunity to resign in lieu of termination. Ultimately, Plaintiff was not offered the position for which she had interviewed and was removed from Cato's employ.

Plaintiff now seeks to add a negligence claim against AlliedBarton "for reckless and negligent conduct when it sent [the pertinent forms] to Plaintiff's then-current employer, [Cato]." (Doc. 65 at 2.)

## II. DISCUSSION

A. Plaintiff Smith's Motion to Amend

With respect to Plaintiff's Motion for Leave to File Third Amended Complaint and therein include a new negligence claim against AlliedBarton, Federal Rule of Civil Procedure 15

plainly presents a liberal amendment policy. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962). In evaluating whether a party is prejudiced by a late-filed motion to amend, "the court should evaluate the position of both parties. This evaluation 'entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.'" *Forstmann v. Culp*, 114 F.R.D. 83, 87 (M.D.N.C. 1987) (citations omitted). Where a plaintiff fails to amend her complaint as soon as the necessity becomes apparent, the Fourth Circuit has held that the amendment may be denied as prejudicial. *See Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 181 (4th Cir. 2008) (denying the plaintiff's motion to amend where he was aware of the claim for nearly a year before filing); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) ("Plaintiffs had an unprecedented thirteen months of unilateral pre-complaint discovery . . . and had already set forth four iterations of their complaint . . . . [P]laintiffs' many opportunities to present their claim warranted denial of the motion to amend.").

Here, Plaintiff argues she should be given leave to file another amended complaint and thereby bring a new negligence claim against AlliedBarton, arguing (1) that Defendants will not be prejudiced by the amendment and that there has been no showing of bad faith or undue delay, and (2) that the proposed amendment is not futile, in part because the Court, in denying Plaintiff's Motion to Reconsider the dismissal of her FCRA claims, "set forth the law of the case

3

that the FCRA [does] not apply to or preclude a negligence claim against AlliedBarton." (Doc. 74 at 2.)

1. The FCRA's Preemption Provisions Do Not Apply

As to Plaintiff's second argument, Plaintiff has misconstrued the law of the case. In response to Plaintiff's FCRA claims, the Court has held (1) that with respect to Plaintiff's initial arguments, 15 U.S.C. § 1681b(a), (b)(1)–(2) places no limitation on a credit reporting agency's contact with any third party when conducting a background investigation, including a consumer's current employer (Doc. 45 at 9); (2) that the Consent Form faxed by AlliedBarton to Cato does not fall within the FCRA's definition of "consumer report" (Doc. 22-1 at 2; Doc. 53 at 7–10);[1] (3) that the certification requirement of 15 U.S.C. § 1681d(d) does not apply because the

---

[1] In its Reply Memorandum in Support of Motion to Reconsider, Plaintiff argued that the Consent Form and a newly mentioned "Request for Information Form" together constitute a consumer report. (Doc. 52 at 1–3.) Although the appropriate vehicle for moving to reconsider an interlocutory order is the Rule 54(b) grant of discretion to the district courts, Plaintiff so moved pursuant to Federal Rule of Civil Procedure 59, perhaps in response to the Clerk's Judgment, entered in error, which was deleted after the Motion for Reconsideration was filed. The exact standard applicable to a Rule 54(b) motion is not clear, though it is typically held to be less exacting than that applicable to a motion under Rule 59(e), which is in turn less exacting than the standard enunciated in Rule 60(b). Though acknowledging this less-exacting standard, courts have looked to the factors considered under Rules 59 and 60 for guidance, *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003), and Rule 54 motions are appropriately granted only in narrow circumstances: (1) upon the discovery of new evidence, (2) upon an intervening development or change in the controlling law, or (3) upon the need to correct a clear error or prevent manifest injustice, *Galeas v. FNU Walrath*, No. 3:11-163, 2012 WL 664927, at *1 (W.D.N.C. Feb. 29, 2012) (Conrad, C.J.) (citing *Pender v. Bank of Am. Corp.*, No. 3:05-238, 2011 WL 62115, at *1 (W.D.N.C. Jan. 7, 2011) (Mullen, J.)). As discussed in the Court's Reconsideration Order, none of these circumstances are met here; Plaintiff's Motion to Reconsider likewise fails under Rule 54.
   The "Request for Information Form" was left unmentioned in the Court's Reconsideration Order. However, arguments raised for the first time on a Motion for Reconsideration are generally deemed waived. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) (stating that an issue first presented in a motion pursuant to Federal Rule of Civil Procedure 59(e) "is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider[s] the issue").

4

materials prepared by AlliedBarton do not constitute an "investigative consumer report" (Doc. 53 at 5–6); and (4) that Defendant, in reference to 15 U.S.C. § 1681e, presented an inadequate evidentiary basis for reconsideration of the Court's dismissal of Plaintiff's FCRA claims (Doc. 53 at 4–5). The application of the FCRA's preemption provisions does not depend on whether a plaintiff has pleaded a valid FCRA claim. Rather, in regard to actions against consumer reporting agencies, a class to which AlliedBarton belongs, 15 U.S.C. § 1681h(e) instructs in pertinent part as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . , based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title . . . [,] except as to false information furnished with malice or willful intent to injure such consumer.

---

There has been no suggestion that evidence of the Request Form had been previously undiscovered or undiscoverable after exercising reasonable diligence. *See Boryan v. United States*, 884 F.2d 767, 771–72 (4th Cir. 1989) ("Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law."). The limited use of a motion to reconsider serves both to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court, and to forestall an unending motions practice. Further still, Plaintiff raised the argument for the first time in a reply memorandum. The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider an issue first raised in a reply brief); *see also Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Group*, No. 06-3418, 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009) (deeming as waived arguments first raised in a reply memorandum). Plaintiff had previously addressed at length whether the Consent Form alone constituted a consumer report for purposes of the FCRA (Doc. 48 at 5–7), and in its directed response, Defendant AlliedBarton made no mention of a Request Form (Doc. 51 at 6–8). Plaintiff's reply therefore exceeded the scope of the arguments raised by the memorandum in opposition, and the Court need not have considered Plaintiff's discussion of the Request Form because Defendant had no opportunity to respond. *See* W.D.N.C. Civ. R. 7.1(E) ("[A] reply brief should be limited to a discussion of matters newly raised in the response."). In any event, the Request Form was simply a blank questionnaire. (Docs. 52-1, 64-2.) While a properly completed Request Form would certainly constitute a consumer report, the antecedent request for information in this case does not meet the FCRA's definition of "consumer report," even when considered in conjunction with the Consent Form. *See* 15 U.S.C. § 1691a(d).

The FCRA thus preempts Plaintiff's negligence claim if two prerequisites are met: (1) the information was disclosed pursuant to section 1681g, 1681h, or 1681m, and (2) the information was neither false nor furnished with malice or willful intent to injure Plaintiff.[2]

Sections 1681g, 1681h, and 1681m all govern disclosures made *to* consumers. The former two are pertinent here and require consumer reporting agencies to disclose consumer information to a consumer upon that consumer's request. Because these sections do not regulate disclosures made to third parties, upon first glance, it seems that section 1681h(e) preempts only those claims arising from communications between Plaintiff Smith and AlliedBarton. However, preemption is plainly meant to encompass some actions for defamation—as one of the three causes of action explicitly listed. As the prima facie case of defamation entails the publication of defamatory statements to third party, *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 783 (N.C. Ct. App. 2004), the preemption provision "would bar only those defamation claims that would fail as a matter of law," *McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d 917, 942–43 (W.D. Wis. 2004). Because this would render Congress's inclusion of defamation within the provision meaningless, to interpret the statute in such a way would violate the well-

---

[2] An amendment in 1996 added to section 1681h(e) the phrase "or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." Pub. L. No. 104-208, § 2408, 110 Stat 3009 (1996). The Court reads the clause "based in whole or in part on the report" to apply only to "adverse action." *See Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010). (*Contra* Doc. 65 at 9–10; Doc. 67 at 19.) Consequently, the FCRA alternatively preempts negligence claims where (1) the information was disclosed by a user of a consumer report to or for a consumer (2) against whom the user has taken adverse action, (3) the user's adverse action against the consumer is based in whole or in part on the consumer report, and (4) the information was neither false nor furnished with malice or willful intent to injure the consumer. *See* 15 U.S.C. § 1681h(e). However, in part because the disclosure at issue was not made by a "user" but rather by AlliedBarton, the consumer reporting agency, this alternative preemption provision is inapplicable to the instant case.

established principle of statutory construction that "a statute ought, upon the whole, to be so constructed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Accordingly, the Court rejects this narrow reading.

In determining what the preemption provision does mean, however, the Court is driven into "a morass of muddled statutory construction." Randall D. Quarles, *Splintered District Courts Continue to Struggle with Federal Preemption of Credit-Reporting Claims*, Banking & Fin. Servs. Pol'y Rep., Mar. 2008, at 8. Several courts, and the parties, have largely glossed over section 1681h(e)'s language regarding sections 1681g, 1681h, and 1681m.

The FCRA generally provides protection to individual consumers via regulation of the flow of information: first, by limiting the circumstances under which consumer reports may be furnished, and second, by granting consumers the ability to review and object to the contents of consumer reports. It is this second sort of protection that sections 1681g and 1681h enable. By securing the means by which individuals may be informed of the nature and substance of the information within their respective consumer reports, the FCRA facilitates the removal of inaccurate or unverifiable information from those reports.

By contrast, Plaintiff's claim focuses not on the contents or accuracy of the consumer report in development but rather on the (seemingly reliable) mechanisms of its construction. In short, Plaintiff's claim has nothing to do with the reliability of the information AlliedBarton attempted to gather from Cato, only *that* it was gathered, and so gathered, revealed Plaintiff's aspirations to work elsewhere. Accordingly, although the Court does not here endeavor to articulate with precision the meaning of section 1681h's preemption provision, the Court holds that the Consent and Request Forms, sent to Cato for the purpose of gathering information to be

7

used in a consumer report, do not themselves constitute "information disclosed pursuant to section 1681g, 1681h, or 1681m." The FCRA therefore does not preempt Plaintiff's claim of negligence.

2. Leave to Amend Would Be Unduly Prejudicial

"Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Pinnix v. Toomey*, 87 S.E.2d 893, 897 (N.C. 1955) (citations omitted). This duty "may arise specifically by mandate of statute," or, as North Carolina's courts have stated on numerous occasions, "it may arise generally by operation of law under application of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others." *Id.*; *accord Council v. Dickerson's, Inc.*, 64 S.E.2d 551, 553 (N.C. 1951) (addressing the defendant's positive legal duty "to exercise ordinary care for the safety of the general public traveling over the road on which he was working"). This duty arises "whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other." *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 268 S.E.2d 12, 15 (N.C. Ct. App. 1980) (citing *Firemen's Mut. Ins. Co.*, 146 S.E.2d 53).

However, while negligence liability for physical harm to one's person or property has deep roots in the common law, *see, e.g.*, *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 267 (N.C. 2006) (conceptually tying legal duty to the foreseeability and avoidability of physical injury), the duty in negligence to avoid the risks of purely *economic* injury is not so readily

established, *see, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 509 n.21 (2008) ("The common law traditionally did not compensate purely economic harms, unaccompanied by injury to person or property." (citing K. Abraham, Forms and Functions of Tort Law 247–48 (3d ed. 2007))). Indeed, though its general language regarding duty of care was quite expansive, the court in *Quail Hollow* ultimately found a duty on the part of a professional person to a third party, not in privity of contract, to prevent foreseeable, purely economic injury in light of the professional's "position and authority." *Quail Hollow*, 146 S.E.2d at 16 (citation omitted) (discussing the relationship between an architect and a homeowner's association, and noting that "the scope of liability of an architect for the negligent performance of his professional duties has undergone considerable expansion"); *see also Davidson & Jones, Inc. v. New Hanover County*, 255 S.E.2d 580, 584 (N.C. Ct. App. 1979) (deeming a duty of due care to avoid economic loss to arise as between an architect and a general contractor and his subcontractors in light of their "economic relations," shared "community of interests," and the nature of their "working relationship").[3]

Even presuming there to be a qualifying "special relationship" between Plaintiff and Defendant AlliedBarton with regard to which the laws of North Carolina impose a pertinent duty

---

[3] The remaining cases referenced in Plaintiff's Memorandum of Law in Support of Motion for Leave to Amend address injuries sustained by a party's person or property. (*See* Doc. 65 at 6–7) (citing *Dickerson's*, 64 S.E.2d 551 (addressing damages to the plaintiff's automobile allegedly resulting from the defendant highway contractor's negligence in paving the road); *Stroud v. S. Oil Transp. Co.*, 3 S.E.2d 297 (N.C. 1939) (addressing personal injuries sustained during tire inflation); *Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*, 146 S.E.2d 53 (N.C. 1966) (addressing damage to property resulting from the negligent conversion of a sprinkler system and further noting that the degree of care required "depends upon the relationship of the parties to one another"); *Honeycutt v. Bryan*, 81 S.E.2d 653 (N.C. 1954) (addressing physical injuries sustained while unloading steel beams from a trailer that was not in a reasonably safe condition for unloading purposes)).

9

of due care, the Court agrees with and adopts the reasoning of Magistrate Judge Cayer. (Doc. 73.) Beyond the inequity noted in *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987), of adding a claim post-discovery and after Defendant AlliedBarton may have decided not to commit its resources to a "shadowy claim that plaintiff may or may not have been serious about raising," the Court and Defendant AlliedBarton have already invested notable resources in responding to Plaintiff's many claims, none of which have survived Federal Rule of Civil Procedure 12(b)(6) or the standards applied on reconsideration.[4] The extent to which Plaintiff may continuously use the Court and defense counsel to test whether she has conceived any claims upon which relief can be granted is not without limit. "Plaintiff's claims have been asserted as to the Defendant, amended, analyzed in a motion to dismiss and dismissed with prejudice, and rejected again upon reconsideration by the Court. Her request for leave to restart this process against AlliedBarton with yet another theory of liability is untimely and unduly prejudicial to AlliedBarton." (Doc 73 at 3.) Plaintiff's Motion to Amend will thus be denied.

B.  Defendant Waverly's Motion for Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record before the Court that the movant believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the event this burden is met, the nonmoving party "must

---

[4] As the Magistrate Judge has noted, ". . . Plaintiff has alleged ten different theories of liability against Defendant AlliedBarton, all of which have been dismissed." (Doc. 73 at 3.)

10

set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. Thus, the nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the Court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

1. The Consent-Form Waiver Is Invalid

Plaintiff first argues that a consumer's waiver or release of claims under the FCRA is invalid as a matter of law. (Doc. 67 at 7–8; *see* Doc. 67-7 at 1.) As Plaintiff has proffered no FCRA-based claims upon which relief can be granted, this assertion is moot.[5]

Plaintiff additionally argues that the waiver is unenforceable because it is extraneous information not allowed in the Consent Form. (Doc. 67 at 8.) Because Waverly intended to cause a consumer report to be procured, *see* 15 U.S.C. § 1681a(d)(1)(B), it was required before

---

[5] Plaintiff in part relies upon agency theory to establish Waverly's liability for AlliedBarton's alleged FCRA violations. (Doc. 67 at 11–14.) Because the underlying FCRA claim against AlliedBarton has been dismissed, the Court need not here determine the nature of AlliedBarton's relationship to Waverly as independent contractor or agent. Additionally, Plaintiff alleges that Waverly violated the FCRA by failing to provide a valid disclosure. (Doc. 67 at 14–15.) As discussed below, this theory likewise fails.

11

procuring the report to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . that a consumer report may be obtained for employment purposes," *Id.* § 1681b(b)(2)(A). Significantly, this writing is to "consist[] *solely* of the disclosure . . . ." *Id.* (emphasis added). As indicated in an agency opinion letter attached by Plaintiff, certain staff members at the Federal Trade Commission "believe that it was the intent of the drafters to assure that the required disclosure appear conspicuously in a document unencumbered by any other information . . . so that consumers will not be distracted by [the ]additional information at the time the disclosure is given." (Doc. 67-8 at 1.) However, these FTC staff members also believed that "including an authorization in the same document with the disclosure" would not be unduly distracting. (Doc. 67-8 at 1.)

Plaintiff has brought to the Court's attention a second FTC opinion letter deeming "a waiver by the consumer of his or her rights under the FCRA" to be in violation of the FCRA in light of section 1681b(b)(2)(A)'s inclusion of the term "solely." (Doc. 67-7 at 1.) Although one may combine the section 1681b(b)(2)(A) disclosure and section 1681b(b)(2)(B) authorization, the additional inclusion of a waiver provision is impermissible in the view of some within the agency. Here, the Consent Form signed by Plaintiff Smith includes the following authorization:

> I hereby authorize the Company to make an independent investigation of my background by obtaining consumer reports relating to me from a consumer reporting agency of the Company's choice. I understand and agree that the information contained in any consumer report will be used to determine my eligibility for employment with a client of the Company and that action may be taken on this information. *I hereby indemnify, release, and hold harmless the Company, any agents or contractors of the Company, or others reporting to or for the Company, any investigators, all former employees, reporting agencies, and all those supplying references and character references, from any and all claims, demands, or liabilities arising out of, or related to, such investigations, disclosures, or admissions*. To assist the Company in obtaining a consumer report, the following information is provided. I understand that the following information will be used for the sole purpose of identification when conducting a background investigation and not used to determine

12

my eligibility for employment.

(Doc. 59-1 at 2) (emphasis identifying the waiver provision added). While such language hardly draws the reader into the proverbial land of lotos-eaters, section 1681b(b)(2)(A) is obviously protective of the disclosure statement's informational segregation. Therefore, in order to give Congress's inclusion of the word "solely" meaningful effect, the Court agrees that inclusion of the waiver provision was statutorily impermissible and that the waiver is therefore invalid. However, while invalid, the waiver—a single sentence within the authorization, which was kept markedly distinct from the disclosure language—was not so great a distraction as to discount the effectiveness of the disclosure and authorization statements. Accordingly, the disclosure and authorization are otherwise adequate.

2. Plaintiff's Negligent Misrepresentation Claim Does Not Survive Summary Judgment

Under North Carolina law, the tort of negligent misrepresentation occurs when "(1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owes the relying party a duty of care." *Jordan v. Earthgrains Cos., Inc.*, 576 S.E.2d 336, 339 (N.C. Ct. App. 2003) (citation omitted). As noted in section A.1, *supra*, the FCRA does not here serve to preempt "any action or proceeding in the nature of . . . negligence" because Plaintiff's claims do not regard "information disclosed pursuant to section 1681g, 1681h, or 1681m." 15 U.S.C. § 1681h(e). Therefore, contrary to Defendant Waverly's assertions, Plaintiff's negligent misrepresentation claim is not prohibited by the FCRA.

Defendant Waverly argues in the alternative that "[t]here was simply no misrepresentation or false statement made by Waverly Partners or Turnbull to Smith that induced her to sign the consent form" (Doc. 59 at 18) or that such representation was not made without reasonable care (Doc. 59 at 19–20). Plaintiff asserts that during "conversations prior to

13

November 29, 2007, Plaintiff informed Turnbull that her job at Cato could be in jeopardy if her immediate supervisor, John Cato, became aware that she was interviewing for another position." (Doc. 67 at 22; *accord* Doc. 67-1 at 3.) In response, Turnbull purportedly assured Plaintiff that "no references would be contacted unless [Plaintiff] was a final candidate and even then only the specific individuals [she] identified as personal references on [her] Reference List would be contacted." (Doc. 67-1 at 3.) Plaintiff claims this statement constituted a negligent misrepresentation to Plaintiff that the search process would be confidential.

Thurnbull's statements, as alleged by Plaintiff, addressed only the timing and identification of reference contacts and did not beget a promise to abstain from contacting Cato in any form. Employer contact and employment-search confidentiality are not categorically mutually exclusive, and it seems Waverly here endeavored to manage both by highlighting the "may contact" and "use discretion" selections on AlliedBarton's online application. Per AlliedBarton's policies and procedures, "may contact" indicates that the submitted employer may be contacted for information, and "use discretion" indicates that only the employer's human resources department may be contacted, and then only under the guise of being "for credit purposes only." (Doc. 59-5 at 8.) The AlliedBarton employees assigned to the case are "not [to] reveal that [they] are calling for an employment background check." (Doc. 59-5 at 8.) Plaintiff acknowledges Waverly's awareness of these policies. (*See, e.g.*, Doc. 67 at 5.)

By selecting "use discretion," Waverly could reasonably expect that AlliedBarton would adhere to its policy of not revealing a candidate's employment search to that candidate's current employer. Plaintiff has offered no evidence that AlliedBarton had regularly failed to adhere to this policy or that Waverly was otherwise on notice that this policy would not be carried out in Plaintiff's case. Accordingly, given the parties' factual assertions in the light most favorable to

14

Plaintiff, a rational trier of fact could not find that Thurnbull's representations to Plaintiff regarding reference contacts entailed information prepared without reasonable care. The Court will therefore grant summary judgment as to Plaintiff's negligent misrepresentation claim.

3. There Remains a Triable Issue Regarding Plaintiff's Breach-of-Contract Claim

As Plaintiff argues, "[t]he Consent Form formed a contract between Plaintiff and Waverly regarding the terms and conditions of the background investigation." (Doc. 67 at 24.) Although Defendant Waverly contests the presence of consideration, the Court finds that Plaintiff's consent to a background check, which facilitated Defendant Waverly's satisfaction of its contractual obligations to its client, was made in exchange for the possibility of Plaintiff's application package being forwarded for consideration by Waverly's client and, more significantly, also in exchange for the limits on the manner in which the background check was to be conducted per Plaintiff's alleged, oral agreement with Turnbull. The authorization required by 15 U.S.C. § 1681b(b)(1), the chance of being considered for a new job, and limitations on the manner in which the consumer report was developed here served as the parties' adequate consideration. Therefore, as the Consent Form constitutes a contract, the Court must here decide whether there remains a genuine issue of material fact regarding the breach of its terms, or more specifically, whether no rational jury could find that the contract prohibited Defendants from contacting Plaintiff's current employer.

The Consent Form itself contains no limiting language. However, as with all contracts, the goal of construction is to determine the intent of the parties at the time of execution. *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C. 1978). Courts determine this intention by first looking within the "four corners" of the agreement. *Jones v. Palace Realty Co.*, 37 S.E.2d 906, 907 (N.C. 1946). Where the contract is "plain and unambiguous on its face[, it] will be

15

interpreted as a matter of law by the court." *Dep't of Transp. v. Idol*, 440 S.E.2d 863, 864 (N.C. Ct. App. 1994) (citation omitted). However, where the language of the contract is reasonably susceptible to varying interpretations asserted by the parties, interpretation of the contract is a matter for the jury. *Idol*, 440 S.E.2d at 864; *see Glover v. First Union Nat'l Bank*, 428 S.E.2d 206, 209 (N.C. Ct. App. 1993) (noting where ambiguity exists).

Here, the pertinent contractual provision reads, "As part of the process of determining your eligibility for employment . . . , [Waverly] may conduct an investigation of your background, past employment . . . , professional licenses . . . , references, [et cetera,] by obtaining consumer reports from a consumer reporting agency of its choice." (Doc. 59-1 at 2.) The crux of the parties' interpretive disagreement rests on the meaning of the term "past employment" and whether this term authorized contact with Cato.

"Past" may be defined as "[n]o longer current; gone by; over," in which case "past employment" would not include employment with Cato. The American Heritage Dictionary 1324 (3d ed. 1992). However, "past" may also mean "[h]aving existed or occurred in an earlier time." *Id.* Plaintiff's employment with Cato, though then ongoing, preceded the formation of the contract. Applying this second definition, the modifier "past" would serve to preclude only an investigation of employment obtained subsequent to the contract's execution. Because this language is fairly and reasonably susceptible to either of the constructions asserted by the parties, the term is ambiguous, and the breach-of-contract claim survives Defendant Waverly's Motion for Summary Judgment.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff Smith's Objection to the Magistrate Judge's Order (Doc. 74) be **OVERRULED**.

16

**IT IS FURTHER ORDERED** that Defendant Waverly's Motion for Summary Judgment (Doc. 58) be **GRANTED** in part and **DENIED** in part. Counts Two (FCRA) and Three (negligent misrepresentation) are hereby **DISMISSED with prejudice**. Count Five (breach of contract) survives Defendant Waverly's Motion.

Signed: August 23, 2012

Richard L. Voorhees
United States District Judge