SHAWN SMITH,

    Plaintiff,

      v.

WAVERLY PARTNERS, LLC, and
ALLIEDBARTON SECURITY SERVICES,
LLC d/b/a HRPLUS,

    Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WAVERLY PARTNERS, LLC's MOTION PURSUANT TO RULE 50(b) AND RULE 59(a)**

      **NOW COMES** Plaintiff Shawn Smith ("Plaintiff" or "Smith"), by and through counsel, and submits the following Memorandum in Opposition to Defendant Waverly Partners, LLC's ("Defendant" or "Waverly") Motion pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for Judgment as a Matter of Law and In the Alternative a New Trial and Defendant's Motion for a New Trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

## INTRODUCTION

      Plaintiff is a fifty-five year old former General Counsel of the Cato Corporation ("Cato"). She was terminated after the Cato Corporation learned she was looking for another job as a result of Defendant's breaches of its written and verbal contracts with her. Although Defendant agreed to only contact her past employers and promised to protect her confidentiality, it did not live up to its agreements with Plaintiff. Plaintiff waited almost three years for her jury trial. Defendant seeks to avoid the verdict by arguing it is not responsible for the actions of its agent, VanElla, again. However, as the jury found, Waverly, not Smith, controlled VanElla's actions, and Waverly is responsible to Smith for VanElla's conduct. In addition, Defendant now seeks to avoid the jury's verdict even on evidence they failed to object to during trial. The jury's verdict

was resoundingly in Plaintiff's favor and Defendant should not be allowed to avoid it or continue to delay.

The Court should not disturb the jury's verdict because the evidence at trial and the reasonable inferences drawn from that evidence support the jury's verdict and award of damages to the Plaintiff.  In addition, when weighing the evidence and assessing the credibility of the witnesses on a motion for a new trial, the jury's verdict should stand because it comports with the clear weight of the evidence, is based on true evidence, and is a just verdict.

In a three day trial on the merits, Plaintiff presented credible and unopposed testimony which was more than sufficient for a jury to reasonably find that Defendant and Plaintiff had a contract limiting the scope of a background check to her "past employment" and that Defendant breached that contract when Waverly's agent, VanElla, contacted her then-current employer, Cato, as part of their background investigation. As shown at trial, the Defendant's verbal assurances of confidentiality and the plain language of the contract limiting the background check to "past employment" required Waverly to refrain from contacting Plaintiff's then-current employer.  Again, unopposed evidence at trial also showed that Waverly breached that contract by hiring VanElla and specifically instructing VanElla that it "may contact" Plaintiff's current employer.  Further, the evidence demonstrated that VanElla was Waverly's agent, and thus liable for VanElla's actions because Waverly selected VanElla to conduct the background check, a task VanElla was required to complete by its client Waverly, and Waverly supplied VanElla with the instructions to perform that task.

Plaintiff also presented evidence that as a result of Waverly's breach, Plaintiff was terminated from her position as Senior Vice President, General Counsel and Corporate Secretary of Cato and that she had lost compensation, wages, and benefits since her termination. Further,

Plaintiff's damages were foreseeable because the Defendant admitted that it was "common sense" not to contact a candidate's current employer because it would place a candidate's job at risk and because Plaintiff alerted Turnbull that her position at Cato would be in jeopardy if her boss, John Cato, learned she was looking for another position.

Defendant did not present a case in chief. At the close of evidence, the Court denied Defendant's Motion for Judgment as a Matter of Law Pursuant to Rule 50(a).

After deliberating, the jury returned a verdict for Plaintiff. On the verdict form, the jury found that Plaintiff had proven by a preponderance of the evidence that Plaintiff and Waverly entered into a contract, that Waverly breached the contract, and that Plaintiff was entitled to damages in the amount of $1,382,062.88.

The Court should deny Waverly's Motion because the clear weight of the evidence supports the jury's verdict finding that Waverly breached the contract with Plaintiff, Plaintiff suffered lost compensation, wages, and benefits of $1,382,062.88 as a result, and because Waverly has not presented any reasonable basis for a new trial. Indeed, Waverly has not shown that any evidence considered by the jury was false or there has been a miscarriage of justice. The jury is presumed to follow the instructions as provided by the Court, and here, the instructions given by the Court were substantially the instructions proposed by Waverly.

At the time of this filing, no final judgment has been entered by the Court in this matter.

## STATEMENT OF THE FACTS

In April 2006, Plaintiff was hired as the Senior Vice President, General Counsel and Corporate Secretary of the Cato Corporation, a public company. (Smith Tr., Dkt. No. 121-1, at 15:21-16:8). Her compensation package with Cato included a salary of $195,700 which increased due to her strong performance, bonuses, stock options, and 401K benefits. (Pl.'s Trial

Ex. 20). Plaintiff remained in that position until she was terminated on December 17, 2010. (Smith Tr. at 56:21-22). While at Cato, Plaintiff's work for the company was excellent and demonstrated her commitment to the company. (Weinstein Tr. at 5:7-9; 6:6-12). In April 2007, Plaintiff received a very good performance evaluation, a raise due to her positive performance, and the maximum performance bonus possible for her position. (Smith Tr. at 69:3-6; Brummer Tr. at 8:2).

While Plaintiff was General Counsel with Cato, Harrison Turnbull, a principal of Waverly, contacted Plaintiff to apply for a general counsel position with one of Waverly's clients on November 5, 2006. (Smith Tr. at 27:12). On the same day, Turnbull emailed Plaintiff a description of the position, which he wrote, and an offer to submit her resume in confidence to Defendant to her personal email account. (Smith Tr. at 23:13-14; Plaintiff's Exs. 3-4; Turnbull Tr. at 4:17-18; 20:3-5). Throughout his contact with Plaintiff, Turnbull created a relationship of trust with Plaintiff so that she felt that he was treating her information in confidence. (Turnbull Tr. at 20:10-13).

Turnbull followed up with Plaintiff by discussing her resume with her and inviting her for an in-depth interview with him. (Id. at 27:12-22). When Plaintiff met with Turnbull on November 20, 2012, she explained to Turnbull that if Cato or her boss, John Cato, learned that she was exploring an opportunity with Turnbull, it would be detrimental to her career and her position at Cato; Turnbull reassured her that the process was confidential and that he would maintain her confidence. (Id. at 29:12-30:12).

After speaking with Plaintiff, Turnbull contacted Plaintiff to offer to submit her name to his client as a candidate for the position. Before submitting her name to the client and scheduling the interview, Turnbull informed Plaintiff it was necessary to complete a background

investigation and emailed her Waverly's Authorization to Conduct a Background Investigation (the "Consent"). (Turnbull Tr. 11:25-12:3; 15:17-20). Plaintiff reviewed the plain language of the Consent and completed the form that Waverly provided to her "in order for him to schedule that interview." (Pl.'s Trial Ex. 7; Smith Tr. at 32:22).

The Consent stated that Waverly "may conduct an investigation of your background, **past employment**, education, professional licenses, criminal records, civil litigation, references, character, and motor vehicle record (if applicable) by obtaining consumer reports…." (Pl.'s Trial Ex. 7)(emphasis added). Plaintiff's reading of the plain language of the Consent was that Waverly was not authorized to contact her current employer. (Smith Tr. at 150:15-21; 173:3). Also, pursuant to Waverly's request, Plaintiff also provided names of individuals at Cato to serve as confidential references, who Defendant assured Plaintiff would not be contacted until after Plaintiff completed an interview with Waverly's client. (Smith Tr. at 34:9-14; Turnbull Tr. at 17:10-12). This was consistent with Plaintiff's past experience in providing information and forms to recruiting firms so she signed the Consent and provided the references. (Smith Tr. at 34:8-14.) Defendant's counsel did not object to any of Plaintiff's testimony cited above.

Defendant selected VanElla to complete the background investigation of Plaintiff. (Turnbull Tr. at 8:12-14). Defendant also instructed its agent, VanElla, to contact Plaintiff's then current employer. (Id. at 8:6-11; 11:12-14; 10:2-5; 4:5-6). Specifically, the background check order Waverly provided to VanElla instructed that VanElla "may contact" Plaintiff's current employer and to use "discretion." (Kaminski Tr. at 10:14-19). When Waverly instructed VanElla "to use discretion" to contact the current employer, Waverly was instructing VanElla to use a "ruse or pretend to be from a bank or a mortgage company, verifying employment for a credit application" so that the current employer would not learn that the candidate was seeking

new employment. (Turnbull Tr. at 10:2-5). There were no policies or procedures put in place by Defendant to ensure that Plaintiff's current employer was not contacted even though "common sense is and common decency is that you don't alert the current employer that you're in conversation with their employee." (Id. at 13:17-25; 14:12-15). The bottom line was that this instruction was contrary to the language on the Consent which limited the background check to "past employment" and contrary to the verbal agreement between Plaintiff and Defendant that Defendant would protect her confidentiality and not contact her current employer.

Despite this, a copy of the Consent and reference check form was faxed to Cato. (Pl.'s Trial Ex. 7). Mr. Brummer reviewed the fax and confirmed that it was a reference check for Plaintiff pursuant to an employment opportunity outside of Cato. (Brummer Tr. at 12:15-16). On December 17, 2007, Plaintiff was terminated from her position at Cato "as [Cato] would [for] any officer at that level knowing that they were looking to leave our company for issues of concern of confidentiality, confidence and trust." (Id. at 12:15-19). Since her termination from Cato, Plaintiff has not found subsequent legal employment or other employment despite substantial efforts, but has started a business that has not yet turned a profit. (Smith Tr. at 71:19-77:19; 82:9-25; Pl.'s Trial Ex. 23).

## LEGAL AUTHORITY

### I.     Standard of Review.

The jury is charged with determining what evidence it will believe and what inferences or conclusions it will draw from the evidence it found credible. Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35 (1944). When ruling on a motion for judgment notwithstanding the verdict or a new trial pursuant to Rule 50(b), the Court is only to determine "whether sufficient evidence exists in the record as a whole upon which a reasonable fact finder could properly return a

verdict in favor of the prevailing party." Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir. 1998).  The Court's role in this determination is strictly limited; facts tried by the jury shall not be reexamined by the Court and the court cannot substitute its judgment of the facts for the jury's judgment of the facts.  Lust v. Clark Equip. Co., Inc., 792 F.2d 436, 437-38 (4th Cir. 1986).  The Court must defer to the judgment of the jury a reasonable jury could return a verdict in favor of plaintiffs when based on the evidence presented at trial. Duke v. Uniroyal Inc., 928 F.2d 1413, 1417 (4th Cir. 1991). As such, the Court "must not weigh the evidence nor assess the credibility of the witnesses."  Taylor v. Home Ins. Co., 777 F.2d 849, 854 (4th Cir. 1985).  Rather, the Court must review the entire record of evidence in the light most favorable to the non-moving party and all reasonable inferences from facts presented at trial must be made in favor of the non-moving party.  Econo Lodges of Am., Inc. v. Norcross Econo-Lodge, Ltd., 764 F. Supp. 396, 399 (W.D.N.C. 1991). Where a reasonable jury could rule in favor of the non-movant, reversal of the jury's verdict is inappropriate.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

### a. There is sufficient evidence for the Jury's verdict that Waverly breached the terms of the Consent by contacting Cato.  The Jury's verdict is supported by the plain language of the contract

There is ample, credible evidence to support the jury's determination that Waverly breached the contract, the Consent, which limited the background investigation to "past employment" when Waverly instructed VanElla to contact Plaintiff's current employer to verify her employment.  To prove a claim for breach of contract, Plaintiff must show the existence of a valid contract and breach its terms.  Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  To determine the terms of the contract, the plain language of the contract controls.  The well-established rule of contract interpretation applicable here states:

> [T]he goal of construction is to arrive at the intent of the parties when the [contract] was issued. Where a [contract] defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect.

e.g., Singleton v. Haywood Elec. Membership Corp., 588 S.E.2d 871, 875, 357 N.C. 623, 629 (2003) (quoting Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978)).

The Consent Form states:

> As part of the process of determining your eligibility for employment with a client of Waverly Partners, LLC (the "Company"), the Company may conduct an investigation of your background, **past employment**, education, professional licenses, criminal record, civil litigation, references, character, and motor vehicle record (if applicable) by obtaining consumer reports from a consumer reporting agency of its choice.

> Several consumer reports may be obtained on you for purposes of determining your eligibility for employment with a client of the Company. The reports may be "investigative consumer reports" that includes information as to your character, general reputation, personal characteristics, and mode of living obtained through personal interviews with neighbors, friends, or associates or with others who may have knowledge of this information…

(Pl.'s Ex. No.7) (emphasis added).

Specifically, the plain language of the contract supports the jury's determination that the Consent limited Waverly's background investigation to Plaintiff's "past employment." As the finder of facts, the jury in this case was charged with interpreting terms in the contract and was instructed that the "meaning was dependent [sic] upon what reasonable persons in the position of the parties would have thought they meant." (Jury Charge Tr. at 11:19-23). The jury was further instructed that they were not to "consider any different but unexpressed meaning intended by either party." Id. Because the plain language of the contract limited the scope of the background investigation, there is sufficient evidence based on the words in the contract upon which the jury

could reasonably conclude that the Consent limited the scope of the background check to past employment. The plain language establishes that Waverly exceeded the scope of Plaintiff's authorization and consent in contacting her current employer and breached the contract.

Second, the jury's verdict of breach is supported by the plain language of the entire Consent contract because every word in an agreement is to be given effect. E.g., Singleton, 588 S.E.2d at 875, 357 N.C. at 629. The jury in reviewing the contract as a whole could not conclude that the Consent gave Waverly the sweeping right to invade every aspect of Plaintiff's "background," as Waverly argues, because the words "***past employment***" would be meaningless and unnecessary. To the contrary, it is reasonable for the jury to conclude that by including the words "past employment," Waverly specifically excluded current employment. Therefore, the evidence reasonably supports the jury's finding that Plaintiff never consented to contact with her current employer through the background check; thus, the Consent contract was breached.

Because the plain language of the Consent agreement controls, it is unnecessary to consider parole evidence. Further, Defendant cites no parole evidence that the jury improperly considered. In fact, the Defendant admits that no parole evidence was presented at trial regarding the parameters for Waverly's contact with Cato, the terms of the consent, the background investigation, or the limited scope of past employment. (Dkt. No. 121 at 4). Because, the plain language of the Consent agreement supports the jury's verdict that Waverly exceeded the scope of the authorization and consent in contacting Plaintiff's current employer and Defendant did not seek an instruction on parole evidence, Defendant cannot be heard to complain about it now.

Alternatively, if the Court determines there was parole evidence, the Court ruled in its summary judgment order that the contract was ambiguous; thus, parole evidence is proper. <u>Drake v. Hance</u>, 673 S.E.2d 411, 413 (N.C.App. 2009).

      **b.**   **There is sufficient evidence for the Jury's verdict that Waverly breached the terms of the oral confidentially agreements.**

There is ample, credible evidence to support the jury's determination that Plaintiff and Defendant agreed to keep Plaintiff's exploration of a possible job opportunity through Waverly in confidence and not disclose the information regarding the job search to Cato. "A contract is an agreement, upon sufficient consideration, to do or not to do a particular thing." <u>Belk's Dept. Store of New Bern, N. C. v. George Washington Fire Ins. Co.</u>, 208 N.C. 267, ____, 180 S.E. 63, 65 (1935) (internal quotations omitted). Oral contracts are binding on the parties of those contracts, even if the parties contemplated that the contract would ultimately be written. <u>Cole v. Champion Enterprises, Inc.</u>, 496 F. Supp. 2d 613, 621-22 (M.D.N.C. 2007) *aff'd*, 305 F. App'x 122 (4th Cir. 2008).

At trial, sufficient evidence was presented for the jury to reasonably conclude that oral agreements between the Plaintiff and Defendant assured that Waverly would provide for a confidential job search process, especially with regard to Plaintiff's then-current employer, and that Defendant breached those agreements when it instructed VanElla to contacted Cato. When initially presented with the possible job opportunity, Plaintiff was assured of Waverly's confidential process in the written position description which was emailed to Plaintiff's private email address as she asked. (Pl.'s Ex. 3, Smith Tr. 23:13-14). In exchange for confidentiality, Plaintiff sent her resume to Defendant and agreed to meet with the Defendant regarding her qualifications. In that meeting, when Plaintiff raised specific concerns with regard to confidentiality, Waverly again agreed the process was confidential and would not divulge

Plaintiff's potential job opportunity to her then-current employer. (Id. 29:12-30:12). During the face-to-face meeting with Turnbull, Plaintiff informed him that if the decision makers at Cato learned that she was exploring a new position, "it would not be a good career move for me." (Id. 29:12-30:12). Turnbull promised that as she continued in the process, her confidentiality would be protected and Cato would not learn she was exploring another job opportunity. (Id. 30:1-5). Again, Plaintiff continued to explore the job opportunity with Defendant in exchange for confidentiality; Defendant gained the benefit of having Plaintiff as a candidate to submit to their client for the position.

Finally, Plaintiff testified, without objection from the Defendant, that she was provided a second form for confidential personal references, including non-decision makers at Cato, who would not be contacted unless and until there was an offer. (Id. 34:9-14). Defendant's corporate representative also testified that personal references at Cato would not be contacted until after the first round of interviews, which Plaintiff had not yet been completed. (Turnbull Dep. 67:9-12; Smith Tr. 34:8-14). Again, in exchange for confidentiality, Plaintiff continued in Defendant's candidate selection process such that Defendant received the benefit of having her name to submit to its client. However, despite those assurances, Defendant instructed Van Ella to contact Cato, thereby revealing Plaintiff's exploration of a job opportunity to her employer (Brummer 12:15-19).

As such, there is sufficient, credible evidence upon which the jury could conclude or draw inferences therefrom that the Plaintiff and the Defendant agreed that Cato was not to learn of Plaintiff's exploration of a job opportunity through Defendant's allegedly confidential process. The jury's verdict for the Plaintiff should stand.

      **c.  The jury's verdict of breach is supported by Waverly's instruction to contact Cato in performing the background check.**

The jury could also reasonably conclude based on the facts presented at trial, that Defendant breached the contract by ordering VanElla to contact Plaintiff's current employer while performing the background investigation, despite the limited consent of past employment and promises of confidentiality. "A breach of contract occurs when a party materially fails to perform an obligation under the contract." Jaffer v. Nat'l Caucus & Ctr. on Black Aged, Inc., 296 F. Supp. 2d 639, 645 (M.D.N.C. 2003). Waverly ordered the background check of Plaintiff by completing an order form which stated "may contact" current employer. (Kaminski Tr. at 10:14-19; Turnbull Tr. at 8:6-11; 4:5-6). Waverly's instruction violates the Consent contract's provisions by allowing contact and investigation of Plaintiff's current employment. Further, Defendant was aware that contact with the current employer was in violation of the terms of the Consent because Waverly further instructed VanElla to use a "ruse" to contact the current employer. (Turnbull Tr. at 10:2-5) Based on this testimony, a reasonable jury could conclude that Defendant's clear instruction to contact the current employer was a breach of the Consent contract, even if the use of what Turnbull characterized as the "ruse" was designed to prevent them from getting caught by the current employer. As such, the jury's verdict should stand.

### d. Sufficient Evidence was Presented by the Plaintiff for a Jury to Find that Waverly was Liable for the Mistake of its Agent, VanElla.

In reviewing the record as a whole, Plaintiff presented sufficient evidence that VanElla was Defendant's agent; thus, Defendant is liable for VanElla's acts. "Every person is bound to use due care in the conduct of his business. If the business is committed to an agent…, the obligation is not changed. The omission of such care is the omission of the principal, and for the injury resulting therefrom…the principal is justly held liable." Wrought-Iron Range Co. v. Graham, 80 F. 474, 482 (4th Cir. 1897). The determination of whether an agency relationship

exists is factually intensive, making it a question properly within the purview of the jury. Daniels v. Reel, 515 S.E.2d 22, 30, 133 N.C. App. 1, 14 (1999).

Waverly chose VanElla to complete the background check of Plaintiff on Defendant's behalf. "An agency relationship arises when parties manifest agreement that one of them shall act subject to and on behalf of the other." Daniels, 515 S.E.2d at 28, 133 N.C. App. at 10-11. Where an agency relationship exists, the principal is liable for the torts of his agent in three situations: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." Whedbee v. U.S., 352 F. Supp. 2d 618, 625 (2005) (citing Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 121, 79 N.C. App. 483, 491 (1986)).

> i. **Waverly Expressly Authorized VanElla to Conduct the Background Investigation, Making VanElla its Agent.**

Sufficient evidence was presented such that the jury could conclude that VanElla performed the background investigation under the express authorization and direction of Waverly. At trial, Mr. Turnbull testified that Waverly contracted with VanElla to conduct background investigations on potential candidates as part of Waverly's executive search consulting business. (Turnbull Tr. at 8:12-14; 11:25; 12:1-3). Waverly informed VanElla of the Consent signed by Plaintiff so that VanElla could conduct a background investigation of Plaintiff. (Kaminski Tr. at 3:16-21). Despite the express limitation in the Consent to a check of past employment, Waverly decided VanElla should contact Plaintiff's current employer using the ruse of a credit application. (Turnbull Tr. at 10:2-5; Kaminski Tr. at 11:4-105).

Though Waverly attempted to avoid the basic application of agency law by presenting testimony that VanElla unexpectedly sent a fax to the current employer regarding the

background check, instead of using the ruse of a phone call for a credit check, there was still sufficient evidence for the jury to find that Waverly was liable for the acts committed by its agent, VanElla. (Kaminski Tr. at 36:17-21, Turnbull Tr. at 10:2-5). Even if VanElla was mistaken in the manner in which VanElla contacted the current employer, the master is liable for the actions of his servant even when the master did not instruct his servent to do something wrong. "In most cases where the master has been held liable for the negligence of his servant, not only was there an absence of authority to commit the wrong, but it was committed in violation of the duty which the servant owed the master…[T]he liability of a master for the tort of his servant does not depend primarily upon the possession of an authority to commit [the wrong]." Wrought-Iron Range, 80 F. at 481. Here, there was sufficient evidence presented that the jury could reasonably find that even though Waverly did not authorize the "unexpected" contact with Cato, since the completion of the background check was expressly authorized by Waverly and Waverly did authorize some contact with Cato by VanElla contrary to the express language of the Consent and understanding with Plaintiff, Defendant was liable for the conduct of its agent, VanElla.

### ii. VanElla was Functioning within the Scope of its Contract with Waverly.

At trial, Plaintiff presented sufficient credible testimony that Waverly was also liable for VanElla's negligent and reckless acts because VanElla was acting within the scope of Waverly's business and not independently when the wrongful act occurred. As expected, the principle of *respondent superior* not only applies but is controlling. The relevant inquiry is whether sufficient evidence was presented at trial that the jury could find "the act was done or omitted by the agent while engaged in the business of his principal." Wrought-Iron Range, 80 F. at 481. If a principal "employs incompetent or untrustworthy servants, it is his fault; and whether the

injury to third persons is caused by the negligence or positive misfeasance of his agent, the maxim of respondent superior applies…." Id. at 482. Further, whether the agent misapplied the principal's instructions is immaterial if the wrongful act was committed within the business of the principal. Id.

The jury was instructed:

A principal is liable to third persons for the acts of his agent in the transaction of the principal's business if the agent himself or herself creates liability. However, a person for whom work is done is not liable for the acts of an independent contractor. An independent contractor is not the agent of a person for whom he or she is performing services. One is an independent contractor when the person for whom he or she is performing services does not have the right or power to control the methods, manner or means in which the details of the work are performed.

(Jury Instruction Tr. at 14:17-15:2).

The Court also instructed the jury on the factors supporting an independent contractor.

(Jury Instruction Tr. at 15:7-21). Finally the Court instructed the jury that:

The existence or nonexistence of one or more of these factors is not necessarily controlling. These factors are to be considered by you along with all the other evidence in determining whether Waverly Partners had the right and power to control the methods, manner or means by which Van Ella or Allied Barton performed the details of its work…The plaintiff bears the burden of proving that Van Ella or Allied Barton was the agent of Waverly Partners. To do so plaintiff Smith must prove by a preponderance of the evidence the following three things: One, there was a principal/agency relationship between Waverly Partners and Van Ella at the time Van Ella performed its background investigation of the plaintiff. Two, that Van Ella was engaged in the work and was about the business of Waverly Partners at the time it conducted the background check. And three, that this work was within the scope and course of Van Ella's authority or employment. This work would be within the course and scope of authority or employment if it was done in furtherance of the business of Waverly Partners or was incident to the performance of duties entrusted to Van Ella or was done in carrying out a direction or order of Waverly Partners and was intended to accomplish the purposes of the agency. Van Ella cannot be an agent of Waverly Partners if you find Van Ella to be an independent contractor with respect to the matter of background investigations under the circumstances in evidence in this case. Should you find Van Ella to be an independent contractor in this respect, then it would be your duty not to impute its actions to Waverly Partners.

(Jury Instruction Tr. at 15:22-17-3).

The evidence showed that Waverly hired VanElla to perform an aspect of its business, the background checks on the candidates it presented to clients. (Turnbull Tr. at 8:6-14; 11:25; 12:1-3). Waverly's business includes completing background searches on candidates prior to the onsite interview with Waverly's client. (Id. at 11:25; 12:1-3). The jury could reasonably conclude that Waverly chose VanElla to conduct the background investigation. (Id. at 8:6-14). In doing so, Waverly controlled what was to be done and how it was to be done. (Id. at 9:9-12; 11:8-14). Waverly filled out forms which instructed and controlled what Waverly wanted done. Id.

Further, based on the evidence presented, the jury could reasonably conclude that Waverly had control over the manner in which VanElla conducted the background investigation because it said VanElla "may contact" Plaintiff's current employer, yet specifically instructed VanElla to "use discretion." (Kaminski Tr. at 8:20-25; 9:1-8; 10:14-19). In this case, "may contact" Plaintiff's current employer allowed VanElla to "use discretion. (Turnbull Tr. at 9:25; 10:1-5). Waverly and VanElla described a ruse they created through which VanElla was allowed to contact a current employer for an employment verification, but could "only contact HR, state that [it was] calling for credit purposes only, and…not reveal that [it was] calling for an employment background check." (Kaminski Tr. at 10:14-19; 11:4-10).

Plaintiff was harmed by the manner in which VanElla, as the agent chosen by Waverly, conducted the background investigation in this case. Waverly is responsible for its choice and the actions of VanElla under the doctrine of *respondent superior*.

### e. The Defense is Not Entitled to a Motion for Judgment Not Withstanding the Verdict on the Issue of Damages.

The Court should deny the Defense's Motion for Judgment Notwithstanding the Verdict

on the issue of damages because the Defendant did not raise the issue in its Motion for Directed Verdict at trial. A defendant's failure to raise an issue in a motion for directed verdict precludes the assertion of that issue in a motion for judgment notwithstanding the verdict. Fed. Sav. & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 137 (4th Cir. 1987). Such a failure cannot be dismissed as a mere technicality. Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers, 34 F.3d 1148, 1155. (2d Cir. 1994).

In Defendant's Motion for Directed Verdict at trial, Defendant did not raise foreseeability of damages as a basis for the directed verdict. As such, to grant a Motion for Judgment Notwithstanding the Verdict on the issue of damages or the foreseeability of damages would be contrary to established precedent. As such, the Motion should be denied.

### f. Alternatively, Sufficient Evidence was Presented that Plaintiff's Damages Were Foreseeable.

If the Court does consider Defendant's Motion for Judgment Notwithstanding the Verdict as to foreseeability of damages, Plaintiff presented sufficient evidence that the damages were foreseeable. When a contract has been breached, an injured party is entitled to be placed as near as possible to the condition that he would have been in had the contract not been breached. Blis Day Spa, LLC v. Hartford Ins. Group, 427 F.Supp.2d 621, 638 (W.D.N.C. 2006). Damages in a breach of contract matter are recoverable if the damages "naturally flow from the breach, and such special or consequential damages are reasonably presumed to have been in within the contemplation of the parties at the time they made the contract, as the probable result of the breach." A.F. Johnson & Son v. Atl. Coastline R.R. Co., 140 N.C. 574, 577, 53 S.E. 362, 363 (1906). Where the harm caused by the breach is one that usually results from the breach, the damages were foreseeable by the defendant. Blis, 427 F.Supp.2d at 638.

Further, where a party had knowledge at the time the contract was formed of the special

damages that would result in the event of breach, special damages are recoverable. <u>Silverman v.</u> <u>Tate</u>, 61 N.C.App. 670, 675, 301 S.E.2d 732, 735 (1983).  However, there is no requirement that the party foresee the exact amount of damages ultimately awarded by the finder of fact in order for the damages to be foreseeable.

In this trial, the record as a whole demonstrated that there was sufficient evidence for the jury to find that Plaintiff was entitled to recover her lost wages and other compensation because the Plaintiff and the Defendant contemplated that Plaintiff could lose her job if the contract was breached.  Plaintiff testified that she spoke with Defendant regarding the paramount importance of confidentiality to her continued employment at Cato.  Plaintiff informed Mr. Turnbull that if the decision makers at Cato learned that she was exploring a new position, "it would not be a good career move for me." (Smith Tr. at 29:12-16; 30:1-12). When she alerted him that her position at Cato would be in jeopardy if the decision-makers at Cato learned she was exploring a job opportunity, Defendant even told Plaintiff he was aware of the company's capacity for temperamental responses to high level employees. (<u>Id.</u> at 29:12-16; 29:17-19; 30:1-12).  Plaintiff informed Mr. Turnbull that she was not interested in making a lateral moved. (<u>Id.</u> at 19:20).  As the executive recruiter for this general counsel position, Defendant should have been aware of the wages and benefits earned by general counsels.  (Turnbull Tr. 3:12-14; 3:25-4:2).

As such, the Defendant must have had knowledge of the special damages that would result in the event of breach at the time the contract was formed; in this case, the nature of Plaintiff's damages, lost compensation and benefits, were reasonably foreseen by the Defendant. It is irrelevant whether Defendant foresaw the length of time or the exact amount of Plaintiff's damages. Defendant's argument that it must foresee the amount of damages would essentially require all contracts to contain a liquidated damages provision and is not supported by law.  As

such, a jury could reasonably conclude that Waverly foresaw that the breach of the contract would include loss income at Plaintiff's rate of compensation for a protracted period of time.

Further, the jury could reasonably conclude that the industry practice for executive recruiters to refrain from alerting the current employer that an executive may be leaving them demonstrates that loss of income is foreseeable if the current employer is alerted to the employee's job search. (Smith Tr. at 30:6-9; Turnbull Tr. at 14:8-19). Defendant stated that "[c]ommon sense and common decency is that you don't alert the current employer" that its employee is seeking employment. (Turnbull Tr. at 14:13-15). As an assurance that her current employer would not be contacted regarding references and her source of income would be protected, Plaintiff was provided a second form for confidential personal references, in which she included some references from Cato, who would not be contacted unless and until there was an offer. (Smith Tr. at 34:9-14). Mr. Turnbull agreed that Plaintiff's confidential personal references would not be contacted until after the first round of interviews, which Plaintiff had not yet completed at the time that Cato was contacted. (Turnbull Tr. at 17:10-12).

**II.     The Court should also Deny Defendant's Motion for a New Trial Pursuant to Rule 59(a).**

As with Defendant's Motion for Judgment As a Matter of Law, the court should also deny Defendant's Motion for a New Trial because Defendant has not presented a valid basis under Rule 59(a).

**a.  Standard of Review.**

A Motion for a New Trial should only be granted when "the verdict is against the clear weight of the evidence, is based on false evidence, or will result in a miscarriage of justice." Cincinnati Ins. Co. v. Dynamic Dev. Group, LLC, 336 F. Supp. 2d 552, 561 (M.D.N.C. 2004) Even though a court may weigh the evidence and consider the witnesses' credibility in ruling

upon a motion for a new trial, "the determination of witness credibility ordinarily remains within the sole province of the jury and will be disturbed only in the most exceptional circumstances." Bailey v. Kennedy, CIV. 5:00CV8-H, 2004 WL 3259000 (W.D.N.C. July 16, 2004) *aff'd*, 120 F. App'x 501 (4th Cir. 2005). So long as "there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed would result in a manifest miscarriage of justice," the appellate court will not view the district court's denial of a new trial as an abuse of discretion. Chesapeake Paper Products Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995).

> **b. A New Trial should not be Granted Because the Clear Weight of the Evidence Supports the Jury's Verdict.**

Though the Court is permitted to weigh the evidence in considering a Motion for a New Trial, such a motion should not be granted if the clear weight of the evidence supports the verdict reached by the jury. In reviewing the evidence at trial, the Court must ask if the verdict is "so inadequately supported by the record" that the decision is arbitrary and objectively unreasonable. Balestrieri v. Am. Home Assur. Co., CIV. 5:07CV109-V, 2010 WL 1533375 (W.D.N.C. Apr. 15, 2010) (quoting Call v. Polk, 454 F. Supp.2d 475, 479 (W.D.N.C. 2006)).

For the reasons previously stated in Section I above, the jury's verdict for breach of contract is also supported by the clear weight of the evidence. Additionally, the clear weight of the unopposed testimony from Brummer demonstrates that Plaintiff was not at risk of losing her position at Cato had it not been for Cato's discovery that she was exploring an employment opportunity outside the company (Brummer Tr. 25:22; 18:12-22; 8:22-24). In fact, her work at Cato was regarded as very good. (Id. at 7:12-25; 8:1-6). Because the verdict is, at the very least, adequately supported by the record, the verdict should not be considered unreasonable or arbitrary. As such, a new trial cannot be granted.

### c. The Jury's Verdict for the Plaintiff is Based on True Testimony.

The truth of the testimony at trial remains unassailed. There have been no allegations raised that the evidence submitted to the jury was false. Though the Fourth Circuit has not addressed the standard for granting a new trial on the grounds of false testimony, several district courts within the Fourth Circuit have adopted the test set forth in <u>Davis v. Jellico Community Hospital</u>, when considering a Motion for a New Trial on the basis of false evidence, which states, "[a] new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that without it, a jury might have reached a different conclusion; that the party seeking a new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial." 912 F.2d 129, 134 (6th Cir.1990); <u>Johnson v. Verisign, Inc.</u>, 2002 WL 1887527 at *12 (E.D.Va. 2002) (applying Davis); see also <u>Gibson v. Total Car Franchising Corp.</u>, 223 F.R.D. 265, 279 (M.D.N.C. 2004) (same); <u>Hospira, Inc. v. Alpha and Omega Transp. Servs.</u>, Inc., 2007 WL 1825182 (W.D.N.C. 2007) (same); <u>Antevski v. Volkswagenwerk Aktiengesellschaft</u>, 4 F.3d 537 (7th Cir. 1993) (same).

In this case, Defendant's Motion for a New Trial and supporting memorandum do not contain any allegations that the testimony of material witnesses included false testimony or that the jury would have reached a different conclusion without testimony of dubious veracity. Further, there is no indication that the Defendant was taken by surprise by any testimony submitted by the Plaintiff at trail. As such, there is no basis for the Court to grant a new trial on the basis that the jury reached its verdict on the basis of false testimony.

### d. There will be a Miscarriage of Justice if the Motion for a New Trial is Granted.

A new trial should not be granted unless it is reasonably clear that the record contains a prejudicial error or that substantial justice has not been done. The moving party has the burden of showing the existence of a harmful error. E.E.O.C. v. Marion Motel Associates, 763 F. Supp. 1338, 1341 (W.D.N.C. 1991) *aff'd*, 961 F.2d 211 (4th Cir. 1992). Defendant has failed to meet its burden with regard to this motion that a prejudicial error has resulted in a miscarriage of justice because Defendant does not raise any errors in its Memorandum in Support of the Motion for a New Trial.

### i. A New Trial cannot be Granted on the Basis of Objections not Raised At the Time of Trial.

A Motion for a New Trial should not be granted where the moving party failed to timely object to the alleged impropriety later raised in the motion for a new trial. Shaw v. Titan Corp., 149 F.3d 1170, 1998 WL 277045, 3 (4th Cir. 1998). During a federal judicial proceeding, if a litigant believes an error has occurred to his detriment, "he must object in order to preserve the issue." Puckett v. U.S., 556 U.S. 129, 134 (2009). If the litigant fails to timely object relief from that error is forfeited. Id. This familiar procedural principal cannot be altered for a litigant who remains silent at trial regarding the alleged error and then raises the error when the case does not conclude in his favor. Id. Such "sandbagging" flies in the face of judicial precedent and cannot be relied upon to justify a motion for a new trial as Defendant asks the court to do in this case. Id. In its Memorandum in Support of Defendant's Motion for a New Trial, Defendant did not assert that the trial was unfair as a result of an error that it objected to during the trial. Rather, the Defendant has manufactured objections, which are baseless and could not have been made at the time of the trial. Accordingly, Defendant's Motion for a New Trial should be denied.

### ii. The Plaintiff's Reasonable and Concise Testimony was Proper.

The Defendant contends that Plaintiff was overly emotional as she testified. During Plaintiff's two days on the stand, Plaintiff's demeanor was reasonable and matter-of-fact as she described her work history, her contact with the defendant, her expectation of the background check process, her termination, and her inability to find new work. (Smith Tr. at 3:8-173:3). Throughout Plaintiff's testimony, the Defendant never objected to Plaintiff's testimony as overly emotional, and accordingly, has not cited to any objections in the record. Specifically, Defendant did not object when she cried briefly while describing her termination from Cato and her move from her Ohio. (Smith Tr. at 51:25-53:10; 10:17-25; 11:1-8). As such, there is no basis for the Court to grant a new trial due now based on mischaracterization of Plaintiff's testimony as overly emotive. The Court should deny the Motion for a New Trial on this basis due to Defendant's failure to object at the time of the testimony.

### iii. The Jury is Presumed to Follow the Instructions, Proposed by the Defense and Adopted by the Court without an Objection by the Defense.

Defendant contends that the jury failed to follow the instructions given by the court; however, there is no basis in the record for Defendant's contention. "Juries are presumed to follow the court's instructions in rendering their verdicts." Harrison-Belk v. Rockhaven Cmty. Care Home, 2008 WL 2390826, *2 (D.S.C. June 9, 2008). Thus, it is not proper to grant a new trial on the assumption that the jury misapplied the law as instructed by the court. O'Bright v. John's Towing Serv., Inc., 9 Fed. Appx. 228, 231, 2001 WL 565242, 231 (4th Cir. May 25, 2001). Further, there has been no contention in these post-trial motions or objection at trial "that the instructions construed as a whole, and in light of the whole record, inadequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987).

With regard to the jury instructions in this case, the Court substantially adopted the Defendant's proposed jury instructions on the issues of agency and contract interpretation. (Dkt. No. 96 at 11, 13-15). The Defendant's current argument that its proposed jury instructions confused the jury is an improper basis for a new trial. Specifically, Defendant's language for the agency instruction, including the factors to be considered in the determination of the agency relationship were issued by the Court. (<u>Id.</u> at 13-15). In addition, the Court substantially adopted Defendant's proposed jury instruction regarding contract interpretation. (<u>Id.</u> at 11). The Court specifically instructed the jury that "[w]hether words or conduct constituted an offer or acceptance and, if so, what their meaning was depend [sic] upon what reasonable persons in the position of the parties would have thought they meant. You must not consider any different but unexpressed meaning intended by either party." (Jury Instruction Tr. at 11:18-23). Given those clear instructions adopted from the Defendant's proposed jury instructions, it is not appropriate to assume that the jury misapplied the law as instructed; consequently, the verdict should stand.

To give credence to the Defendant's argument for a new trial would result in a grave miscarriage of justice. For each of the foregoing reasons, Defendant's Motion for a New Trial should be denied.

### III.   The Court should not Order a New Trial, *Sua Sponte.*

Though the trial court may grant a new trial *sua sponte* for any reason that would justify granting such a motion if made by a party, the Court, pursuant to Rule 59(d), must give the parties notice and an opportunity to be heard. <u>Valtrol, Inc. v. Gen. Connectors Corp.</u>, 884 F.2d 149, 155-56 (4th Cir. 1989). A Motion for a New Trial if made by a party "should only be granted if the verdict is against the clear weight of the evidence, is based upon evidence which is false, or will result in a miscarriage of justice. <u>Cincinnati Ins. Co. v. Dynamic Dev. Grp., LLC,</u>

336 F. Supp. 2d 552, 561 (M.D.N.C. 2004). There is no basis for the Court to grant a new trial *sua sponte*.

For the reasons stated above, there is no indication that the verdict was against the clear weight of the evidence, was based upon evidence which is false, or resulted in a miscarriage of justice. As such, this Court should deny Defendant's Motion for a New Trial and request that the parties be provided with notice and an opportunity to be heard regarding a Motion *Sua Sponte* for a New Trial.

<u>**CONCLUSION**</u>

Defendant's Motion for Judgment as a Matter of Law and in the Alternative a New Trial and Defendant's Motion for New Trial should be denied. There was ample evidence presented at trial and the reasonable inferences drawn from that evidence to support the jury's verdict and award of damages to the Plaintiff. The plain language of the Consent and authorization to perform the background check supports the jury's verdict of breach of contract either by Waverly's instruction to VanElla to contact Plaintiff's then-current employer or by vicarious liability, as VanElla was Waverly's agent. Defendant also breached its verbal promises to Plaintiff of confidentiality. Though the Defense is not entitled to a Motion for Judgment Not Withstanding the Verdict on the issue of damages, Plaintiff's damages of loss wages were foreseen by Defendant due to the industry practice of confidentiality to protect candidates and Plaintiff's statements that her career would be jeopardized if her then-current employer was contacted.

Even when weighing the evidence and the credibility of the witnesses, the Court should deny the Defendant's Motion for a New Trial Pursuant to Rule 59(a) because there is no basis upon which the Court could grant the a New Trial Pursuant to Rule 59(a). The jury's verdict for

the Plaintiff is based on the clear weight of true evidence.  Further, there will be a miscarriage if the Court considers objections not raised in trial as basis the for a new trial.

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny Waverly's Motion for Judgment as a Matter of Law and in the Alternative a New Trial and Motion for a New Trial pursuant to Rule 59(a).

Respectfully submitted, this the 3rd day of December, 2012.

**MALONEY LAW & ASSOCIATES, PLLC**

/s/ Margaret Behringer Maloney
Margaret Behringer Maloney, N.C. Bar No. 13253
Tamara L. Huckert, N.C. Bar No. 35348
Audrey C. Page, N.C. Bar No. 32857
1824 East Seventh Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
thuckert@maloneylegal.com
apage@maloneylegal.com
Telephone:  704-632-1622
Facsimile:  704-632-1623
*Attorneys for Plaintiff Shawn Smith*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WAVERLY PARTNER, LLC'S MOTION FOR PURSUANT TO 50(b) AND RULE 59(a)** with the Clerk of Court using the CM/ECF system, which will send the notice of electronic filing to the following:

Mr. Kenneth R. Raynor
N.C. Bar No. 10488
Templeton & Raynor, P.A.
1800 East Boulevard
Charlotte, NC 28203
ken@templetonraynor.com
Phone: 704-344-8500
Facsimile: 704-344-8555
*Attorneys for Waverly Partners, LLC*

Mr. David L. Levy
N.C. Bar No. 34060
Hedrick Gardner Kincheloe & Garafalo, LLP
P.O. Box 28230
Charlotte, NC 28230
dlevy@hedrickgardner.com
Phone: 704-319-5426
Facsimile: 704-602-8178
*Local Counsel for AlliedBarton Security Services, LLC d/b/a HRPlus*

Frederick T. Smith
Georgia Bar No. 657575
Admitted *Pro Hac Vice*
Seyfarth Shaw LLP
1545 Peachtree Street, N.E., Ste. 700
Atlanta, GA 30309-2401
Telephone: 404-885-1500
Facsimile: 404-832-7056
fsmith@seyfarth.com
mgilmore@seyfarth.com
*Lead Counsel for AlliedBarton Security Services, LLC d/b/a HRPlus*

This the 3rd day of December, 2012.

MALONEY LAW & ASSOCIATES, PLLC

/s/ Margaret Behringer Maloney
Margaret Behringer Maloney, N.C. Bar No. 13253
Tamara L. Huckert, N.C. Bar No. 35348
1824 East Seventh Street
Charlotte, NC 28204
mmaloney@maloneylegal.com
thuckert@maloneylegal.com
Telephone: 704-632-1622
Facsimile: 704-632-1623
*Attorneys for Plaintiff Shawn Smith*