# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:10-cv-00028

SHAWN SMITH,

                          Plaintiff,

v.

WAVERLY PARTNERS, LLC, and
ALLIEDBARTON SECURITY SERVICES,
LLC d/b/a HRPLUS,

                         Defendants.

**WAVERLY PARTNERS, LLC's REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WAVERLY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND ALTERNATIVE MOTION FOR NEW TRIAL**

## I. No Breach of Contract

### A. Plaintiff has presented no relevant evidence that the Consent disallowed Waverly from ordering an investigation that could include contacting Cato Corporation or Cato personnel

The issue before the jury in this case was whether Waverly breached the terms of the Disclosure and Consent ("Consent") by ordering a background investigation that was not limited to Plaintiff's "past employment." The undisputed evidence before the jury was that express terms of the Consent permitted Waverly to order an investigation of Plaintiff's background that was not limited to "past employment," and that allowed for contact with Cato Corporation and Cato personnel. Therefore, the jury verdict cannot stand.

The unequivocal language of the Consent required Waverly solely "to make an independent investigation of [Plaintiff's] background by obtaining consumer reports" from a third party contractor of Waverly's choosing. Once Waverly ordered a background investigation from AlliedBarton, Waverly's only obligation under the Consent was met and Waverly's performance of the contract complete. Plaintiff's arguments attempt to enlarge Waverly's obligation under the Consent to require Waverly to insure that Waverly's contractor would not contact anyone at Cato. There was no evidence before the jury to support such an obligation under the Consent.

**B. The plain language of the Consent controls, and Plaintiff's reliance upon parol evidence, subjective impressions, and other extrinsic matters suggests that the jury violated the Court's instructions in finding that Waverly breached the terms of the Consent**

Waverly and Plaintiff agree that the plain language of the written contract, the Consent, controls, and that parol evidence should not have entered the jury's deliberations. Yet, Plaintiff wishes to ignore plain terms of the Consent that permitted contact with Cato and Cato personnel. Conversely, Plaintiff wishes to substitute her subjective understanding and other extrinsic evidence for plain terms of the Consent that do not lead to her desired result. The Court should hold Plaintiff to the contract she signed and enforce the plain meaning of the entire written agreement.

Plaintiff admitted in her trial testimony that the Consent's express written terms included categories of information in addition to "past employment" that allowed Waverly to order an investigation that could include contact with Cato and Cato personnel. Smith Tr. 117:18–21 (admitting to the jury that the Consent did not expressly prohibit Waverly or its contractor from contacting Cato); id. at 114:8–116:2 (conceding that the plain language of the Consent authorized Waverly to obtain an unlimited investigation of several categories of information beyond "past employment," including Plaintiff's "background, . . . character, general reputation, personal characteristics, and mode of living," and that these categories encompassed Plaintiff's current employment); id. at 116:19–117:17 (admitting that the investigation, to be handled by a contractor of Waverly's choosing, could involve "personal interviews with neighbors, friends, or associates," including Cato coworkers); id. at 115:4–8 (admitting that she could have, but chose not to, amend the terms of the Consent to prohibit contact with Cato).

Plaintiff also acknowledges that the jury was expressly instructed "not to 'consider any different but unexpressed meaning intended by either party.'" Pl.'s Br. 8 (quoting Jury Charge Tr. 11:19-23). Tellingly, however, Plaintiff's arguments attempting to justify the jury's verdict repeatedly cite almost exclusively to extrinsic evidence that violates the Court's instructions against considering either party's subjective, unexpressed impressions; and that is wholly inapposite to the

issue of formation and breach *of the Consent*. See Pl.'s Br. 5 ("Plaintiff's [subjective and unexpressed] reading of the plain language of the Consent was that Waverly was not authorized to contact her current employer."); Smith Tr. 43:5–8 (Plaintiff testifying that she signed the Consent without requesting any changes or amendments because "it comported with my [subjective and unexpressed] understanding of what background investigation I was consenting to."); Pl.'s Br. 5 (stating that Waverly's request "was consistent with Plaintiff's [subjective and unexpressed] past experience in providing information and forms to recruiting firms so she signed the Consent and provided the references."); id. at 10 (arguing that "[t]here is sufficient evidence for the Jury's verdict that Waverly breached the terms of [prior] oral confidentially [sic] agreements," which were parol as to the Consent); see also id. at 6 (stating that Waverly's request to its contractor, AlliedBarton, to conduct an employment verification was "contrary to the [prior] verbal agreement between Plaintiff and Defendant that Defendant would protect her confidentiality and not contact her employer.").

Plaintiff cannot evade the fundamental infirmity of the jury's verdict: that the Consent, which is presumed to stand as the final expression of the parties' intent, by its plain language is not limited to investigation of Plaintiff's "past employment." No reasonable jury could have found that the Consent was so limited. For this reason, the Court should reject the verdict and dismiss Plaintiff's claim against Waverly with prejudice.

## II. No Proof of Agency

Plaintiff seeks to impose a negligence standard on Waverly for conduct of AlliedBarton that was unrelated to Waverly's sole obligation under the Consent. Plaintiff cannot point to any evidence at trial that would have allowed a reasonable jury to conclude that Waverly controlled AlliedBarton in the details of its work as required to establish agency, or that AlliedBarton was "about Waverly's business" when it conducted its background check on Plaintiff. Plaintiff failed to timely plead negligence against AlliedBarton, and the Court denied Plaintiff's belated effort to add this claim. The Court should not permit Plaintiff to prevail in her breach of contract case against Waverly on

a negligence theory that was not before the jury, based on actions of a third party that were not undertaken in fulfillment of Waverly's sole obligation under the Consent.

The issue of agency is properly framed by considering the subject matter of the Consent. The Consent did not require Waverly to *conduct* a background investigation. If anything, it required Waverly to *obtain* such an investigation. See Pl.'s Tr. Ex. 5 (authorizing Waverly in "*obtaining* consumer reports relating to [Plaintiff] *from a consumer reporting agency* of [Waverly's] choice." (emphasis added)). An agent, with respect to the performance of Waverly's obligations under such a contract, would have been a party acting on Waverly's behalf and in Waverly's place to *obtain an investigation*—not to *conduct* such an investigation. Waverly's act of ordering an employment verification from AlliedBarton was all that was required of Waverly under the Consent. Once this action was taken, Waverly's sole obligation under the Consent was satisfied. The performance of the investigation itself was not a part of the contract. Thus, Waverly did not hold the position of principal with respect to AlliedBarton's performance of the investigation, which was beyond the scope of Waverly's sole obligation.

To say, based on this evidence, that Waverly "instructed" AlliedBarton in the details of whether, and in what manner, AlliedBarton contacted Cato is as absurd as concluding that a restaurant patron "instructs" the chef on how to prepare his food by merely placing an order for a meal. If such transactions formed the basis for agency liability, any order of services placed with any service provider would expose the customer to liability for the service provider's negligence. North Carolina law of agency does not support this result. The Court should reject Plaintiff's agency theory as unsupported by any of the evidence at trial.

### III. No Support for Negligence Liability

Assuming, *arguendo*, that Plaintiff could prove an agency relationship, she has, nevertheless, failed to direct the Court to any North Carolina case for the proposition that an agent's act of negligence can support a claim against the principal for "vicarious breach of contract." There is no such case law in North Carolina, and Plaintiff cannot graft a negligence claim onto her breach of

Page 4

contract claim. Plaintiff failed to timely bring a negligence claim against the proper party. Imposing negligence liability under Plaintiff's breach of contract theory is untenable, unjust and, frankly, ludicrous. The Court should reject this result as unjust and unsupportable.

Without exception, Plaintiff's arguments for agency liability cite to case law dealing with a principal's liability *in tort* for the negligent actions of a servant. This case law fails to support breach of contract liability. Rather, as the Court should note, the case law Plaintiff cites on this issue uniformly supports Waverly's position, not Plaintiff's. See Wrought-Iron Range Co. v. Graham, 80 F. 474, 475 (4th Cir. 1897) (principal held liable in tort where agency relationship with primary tortfeasor was undisputed); Daniels ex rel. Webb v. Reel, 133 N.C. App. 1, 13, 515 S.E.2d 22, 30 (1999) (reversing summary judgment as to one of several co-defendants on plaintiff's claim for vicarious tort liability); Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 496, 340 S.E.2d 116, 124 (1986) (reversing summary judgment for employer as to plaintiff's negligent hiring and retention claim); Whedbee v. United States, 352 F. Supp. 2d 618, 629 (M.D.N.C. 2005) (dismissing tort claims against the federal government based on tortious acts of plaintiff's former coworkers).

Furthermore, the facts here do not conform to any of the four situations in which North Carolina courts recognize a claim for negligence damages on a breach of contract claim. See North Carolina State Ports Auth. v. Lloyd Fry Roofing Co., 294 N.C. 73, 82, 240 S.E.2d 345, 350-51 (1978).

For these reasons, no reasonable jury could have found Waverly liable for AlliedBarton's acts of negligence, under an agency theory or otherwise.

### IV. Alternatively, the Case Should Be Retried Pursuant to Rule 59

If the Court declines to grant Waverly's Rule 50 Motion, for the reasons stated heretofore, the jury's verdict nonetheless defied the clear weight of the evidence. Alternatively, justice requires that the case be retried pursuant to Rule 59.

It would be unjust to hold Waverly accountable for Plaintiff's injury based, as the jury verdict clearly was, on the unforeseeable events that led to Plaintiff's termination. As Plaintiff's testimony

and the evidence of her conduct indicate, neither party could have reasonably foreseen that Plaintiff could be terminated as a result of Waverly's procurement of a background investigation.

Plaintiff herself admitted that it was unimaginable that she could be terminated for pursuing opportunities with Waverly. Smith Tr. 102:25–103 (describing the termination as "outside the realm of possibilities"). Her conduct in authorizing Waverly to contact Cato references, including corporate officers—without delay or limitation—defies any reasonable inference that the parties contemplated Plaintiff's termination resulting from contact with these Cato officers and other personnel. See Pl.'s Trial Ex. 6, 4 (Plaintiff's December 3, 2007, authorization to contact Cato references); Smith Tr. 123:7–9 (conceding that this "reference checking process would include contacting people at Cato"); Pl.'s Trial Ex. 6, 5 (Plaintiff's list of references including Cato Executive Vice President and second-in-command Allen Weinstein, and Chief Information Officer Robin Scott); Smith Tr. 123:17–19 (Plaintiff's admission that she could have, but did not, place any limitation on the permission indicated by the Reference Authorization). Plaintiff's filing, and eventual settlement with Cato, of an EEOC Charge of Discrimination alleging gender discrimination proves that Plaintiff herself did not believe that the faxed Consent was Cato's reason for the firing. Def.'s Trial Ex. 17, 2; Smith Tr. 165:13–19; 167:22–168:19.

Furthermore, the clear weight of evidence relating to AlliedBarton's errant fax was that it violated AlliedBarton's protocols and, thus, defied any reasonable expectations Waverly could have had based on its prior dealings with AlliedBarton. Kaminski Tr. 36:7-21. Moreover, AlliedBarton was permitted, but not required, to contact Cato to get the information Waverly ordered. Turnbull Tr. 9:21-10:7.

The clear weight of evidence unequivocally shows that Plaintiff's termination was the result of unforeseen, and unrelated causes having nothing to do with Waverly's sole obligation under the Consent. The Court should, alternatively, grant Waverly's Rule 59 Motion and order a new trial of this matter.

Lastly, the Court may, *sua sponte*, grant a new trial for any other reason not argued herein that has previously justified a new trial under Rule 59. Accordingly, the Court should grant Waverly's Rule 59 Motion and order that the case be retried for any reason it sees such retrial is warranted in the interests of justice.

## V. Conclusion

For the reasons stated herein, Waverly respectfully requests that the Court grant its Motion for Judgment Notwithstanding the Verdict and dismiss Plaintiff's breach of contract claim with prejudice. Alternatively, Waverly asks that the Court grant its Motion for New Trial and order that the case be retried on all issues.

This the 27th Day of December, 2012.

**TEMPLETON & RAYNOR, P.A.**

*/s/Kenneth R Raynor*
Kenneth R. Raynor
*(Attorney for Waverly Partners, LLC)*
1800 East Boulevard
Charlotte, NC 28203
Phone 704.344.8500; Fax 704.344.8555
*ken@templetonraynor.com*
N.C. Bar No.: 10488

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2012, I electronically filed **Waverly Partners, LLC's Reply to Plaintiff's Memorandum in Opposition to Waverly's Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

mmaloney@maloneylegal.com
Margaret B. Maloney
MALONEY LAW & ASSOCIATES
1824 East Seventh Street
Charlotte NC 28204
*(Attorney for Plaintiff Shawn Smith)*

Fsmith@seyfarth.com
Frederick T. Smith
SEYFARTH SHAW, LLP
1545 Peachtree Street, N.E., Suite 700
Atlanta GA 30309-2401
*(Attorney for AlliedBarton Security Services, LLC)*

dlevy@hedrickgardner.com
David L. Levy
HEDRICK GARDNER KINCHELOE & GAROFALO, LLP
P. O.Box 30397
6000 Fairview Road, Suite 1000
Charlotte NC 28230
*(Attorney for AlliedBarton Security Services, LLC)*

This the 27th Day of December, 2012.

*/s/Kenneth R Raynor*
Kenneth R Raynor
**TEMPLETON & RAYNOR, P.A.**